Calvin J. WEBER, Appellant,

v.

UNITED STATES of America and United States Office of Special Counsel, Appellees.

No. 99–5087.

United States Court of Appeals, District of Columbia Circuit.

Argued March 13, 2000.

Decided April 28, 2000.

Elizabeth E. Appel Blue, appointed by the court, argued the cause as amicus curiae on the side of appellant. With her on the briefs were David W. DeBruin and Nory Miller.

Calvin J. Weber, appearing pro se, was on the briefs for appellant.

Jane M. Lyons, Assistant United States Attorney, argued the cause for appellees. With her on the brief were Wilma A. Lewis, U.S. Attorney, R. Craig Lawrence and Sally M. Rider, Assistant U.S. Attorneys.

Before: SILBERMAN, RANDOLPH, and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Calvin Weber sought a writ of mandamus to compel the U.S. Office of Special Counsel (OSC) to investigate his charge that he had been stripped of a security clearance in retaliation for whistleblowing. The district court granted summary judgment against Weber, and he appealed. We affirm.

## I.

Weber worked for the Army as a civilian engineer at what was then the Aviation Systems Command in St. Louis, Missouri. He specialized in infrared suppressor systems, which are used to help aircraft evade heat-seeking missiles. In October 1990, he publicly alleged that many of the Army's helicopters being sent to the Persian Gulf for Operation Desert Storm did not carry infrared suppressor systems, making them vulnerable to attack by enemy missiles. The Army revoked Weber's security clearance in February 1993. Because his position required a security clearance, Weber was fired a few months later.

Weber complained to the U.S. Office of Special Counsel (OSC) that the Army's revocation of his security clearance was in retaliation for whistleblowing. It is a "prohibited personnel practice" for a gov-

ernment agency to take a "personnel action" against an employee because of his disclosure of illegal activity or of "gross mismanagement, a gross waste of funds, ... or a substantial and specific danger to public health or safety." 5 U.S.C. § 2302(b)(8). An employee who believes he has been the victim of a prohibited personnel practice must first complain to the OSC, which is required to investigate the complaint "to the extent necessary to determine whether there are reasonable grounds to believe that a prohibited personnel practice has occurred." 5 U.S.C. § 1214. If the OSC determines that a prohibited personnel practice has occurred, it must report its findings to the Merit Systems Protection Board (MSPB), and it may petition the Board to take action on behalf of the employee. But even if the OSC's investigation does not support the complaint, the employee still may bring an individual action before the MSPB. *See* 5 U.S.C. § 1221. In either case, the MSPB's decision is appealable to the Federal Circuit. *See* 5 U.S.C. § 7703.

The OSC declined to investigate Weber's complaint. Its letter explained:

> In [*Department of the Navy v. Egan*, 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988)], the Supreme Court found that the Merit Systems Protection Board does not have the authority to review the substance of the underlying reasons for revoking or denying a security clearance. Consequently, the Merit Systems Protection Board also does not have authority to review an adverse personnel action, either appealed directly or presented in an Office of Special Counsel prosecution case, which is taken against an employee as a result of an agency decision to withdraw or revoke a security clearance which is necessary for continuing employment in a specific job. Thus, we have no basis for further inquiry into your complaint....

Weber filed an individual action with the MSPB, which consistent with the OSC's view concluded that it lacked jurisdiction. *See Weber v. Department of the Army*, 59 M.S.P.R. 293 (1993). The Federal Circuit affirmed. *See Weber v. Merit Sys. Protection Bd.*, 26 F.3d 140 (Fed.Cir.1994).

He then brought this action against the OSC, advancing both statutory and constitutional claims. Giving a liberal construction to Weber's *pro se* complaint, *cf. Richardson v. United States*, 193 F.3d 545, 548 (D.C.Cir.1999), the district court construed it as requesting a writ of mandamus to compel the OSC to investigate Weber's allegations. It concluded, however, that the OSC had no duty to conduct an investigation because the denial of a security clearance was not a "personnel action." It further held that the OSC had not deprived Weber of liberty or property in violation of the Due Process Clause. It therefore granted summary judgment to the government, and Weber appealed.

## II.

■ Appointing an *amicus* to take appellant's position, we directed the parties to address *inter alia* the district court's jurisdiction to issue a writ of mandamus to the Office of Special Counsel, a question that had been left open in *Barnhart v. Devine*, 771 F.2d 1515, 1524 n. 15 (D.C.Cir. 1985). The government now argues that the district court lacked jurisdiction. It relies on *Telecommunications Research and Action Ctr. v. FCC*, 750 F.2d 70 (D.C.Cir.1984) ("*TRAC*"), for the proposition that when a Court of Appeals has jurisdiction to review the actions of an agency, then the district courts lack power to issue writs of mandamus to that agency. In *TRAC*, we explained that by "lodging review of agency action in the Court of Appeals, Congress manifest[s] an intent that the appellate court exercise sole jurisdiction over the class of claims covered by the statutory grant of review power." *Id.* at 77. According to the government, allowing district courts to issue writs of mandamus to the OSC would interfere with the Federal Circuit's exclusive jurisdiction to review the decisions of the MSPB.

The difficulty with the government's position is that the Federal Circuit reviews the actions only of the MSPB and not of the OSC, which is a separate and independent agency. *See* 5 U.S.C. § 1211. To be sure, an employee alleging a prohibited personnel practice must give the OSC a chance to investigate before going to the MSPB. But the MSPB does not review the OSC's decision of whether to investigate; it simply makes its own assessment of the validity of the complaint. When the Federal Circuit reviews the MSPB's action, it is not even indirectly reviewing the OSC, so allowing district courts to issue writs of mandamus to the OSC would not affect the Federal Circuit's jurisdiction.

Indeed, if district courts lacked power to issue the writ, judicial review of OSC actions would not be available. *TRAC* had recognized that mandamus might be available when "a denial of review in the District Court will truly foreclose all judicial review." *TRAC*, 750 F.2d at 78. (The government does not argue that the actions of the OSC should be entirely immune from judicial review.[1]) Here, Weber claims that the OSC violated a statutory duty to investigate his allegations. This is a claim that he could not make before the MSPB or the Federal Circuit, so if the district court lacked jurisdiction, Weber would have no way to vindicate the statutory right he asserts.

We conclude that the district court had jurisdiction over this action, and we therefore have jurisdiction over this appeal.

### III.

Turning to the merits, the *amicus* argues that even though the Supreme Court's decision in *Egan* stripped the MSPB of authority to take action on behalf of an employee whose security clearance has been revoked, the OSC nevertheless has a duty to undertake an investigation of Weber's complaint. Such an investigation would not be futile it is argued because under the statute the OSC is not limited to prosecuting before the Board: if it determines that a prohibited personnel practice has occurred, it must report its findings or recommendations to "the agency involved and to the Office of Personnel Management, and [it] may report such determination, findings, and recommendations to the President." 5 U.S.C. § 1214(b)(2)(B). Still, we believe that this grant of authority to the OSC does not justify the issuance of a writ of mandamus, for two reasons.

First, the OSC may act—whether by proceeding before the MSPB or by making a recommendation to the agency or the President—only with respect to a "prohibited personnel practice." As we have noted a "prohibited personnel practice" is a "personnel action" taken for an impermissible reason. But "personnel action" is defined in terms of a list of actions such as appointment, promotion, and reassignment, that does not include the granting or denial of a security clearance. *See* 5 U.S.C. § 2302(a)(2). It might be thought that a security clearance revocation could fall within the statute's catch-all provision, which at the time of Weber's dismissal referred to "any other significant change in duties or responsibilities that is inconsistent with the employee's salary or grade." *See* 5 U.S.C. § 2302(a)(2)(x) (1993). But this reading is foreclosed by *Egan*.

Admittedly, *Egan* did not directly address the meaning of "personnel practice" in § 2302. It concluded that the revocation of a security clearance is not an "adverse action" that can be reviewed by the MSPB under 5 U.S.C. § 7513. Yet it did not reach this conclusion by parsing the language of that statutory provision.

1. Such an argument would not be very plausible in light of *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). In *Leedom*, the Supreme Court held that although NLRB orders in certification proceedings had been understood not to be final orders subject to judicial review, a district court had jurisdiction over a suit to "strike down" an order made in excess of the Board's authority, because a plaintiff otherwise would have no means of enforcing an express statutory mandate.

Instead, it made the judgment that "the protection of classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it. Certainly, it is not reasonably possible for an outside nonexpert body to review the substance of such a judgment...." *Egan,* 484 U.S. at 529, 108 S.Ct. 818. In other words, the general presumption of reviewability of agency action does not apply to security clearance decisions. The *Egan* rationale obviously applies here as well and therefore a "personnel practice," like "adverse action," does not include a decision about a security clearance. *Amicus* suggests that the OSC did not rely on this interpretation of the statute in its letter to Weber and so we cannot base our opinion on it.[2] But the OSC's view of its authority is not relevant because mandamus is proper only when an agency has a clearly established duty to act, and here the OSC does not.[3]

Mandamus is inappropriate, moreover, for a second reason. *Amicus* argues that the OSC has a duty to undertake an investigation, but because she concedes that it would be futile for the OSC to bring Weber's case before the MSPB, the purpose of its investigation would be limited to writing a letter to the Army, to the Office of Personnel Management, or to the President. The act of reporting recommendations, however, is highly discretionary and therefore far removed from the paradigm case for mandamus—a ministerial act that an agency has a clear duty to perform. *See Council of and for the Blind of Delaware County Valley, Inc. v. Regan,* 709 F.2d 1521, 1533 (D.C.Cir.1983) (en banc). And there is no reason to believe that even a favorable OSC recommendation—which would not be binding on any-

one—would actually help Weber. Mandamus is an extraordinary remedy whose issuance is guided by equitable principles. *See 13th Regional Corp. v. United States Dep't of Interior,* 654 F.2d 758, 760 (D.C.Cir.1980). It is not to be granted in order to command a gesture. We think it would be inappropriate to issue a writ of mandamus to compel the OSC to make what would amount to a purely hortatory statement.

\* \* \* \*

The judgment of the district court is

*Affirmed.*

---

2. Indeed, in another case the OSC has explicitly rejected this reading, perhaps reflecting an understandable desire to interpret its enforcement authority broadly. *See Roach v. Department of the Army,* 82 M.S.P.R. 464 (1999) (pending review in the Federal Circuit).

3. This conclusion also disposes of Weber's constitutional claims. Amicus contends that Weber has been deprived of liberty without due process because he has lost his job and has been "stigmatized." Since the OSC had no duty—and indeed no authority—to conduct an investigation, its failure to do so could not have deprived Weber of any legal right.