**Marie V. STELLA, Appellant**

v.

**Norman Y. MINETA and Jane F. Garvey, Administrator,Federal Aviation Administration, Appellees**

**No. 00–5458.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 5, 2002.

Decided March 29, 2002.

Gary T. Brown argued the cause for appellant. With him on the briefs was Camilla C. McKinney.

Michael A. Humphreys, Assistant United States Attorney, argued the cause for appellee. With him on the brief were Roscoe C. Howard, Jr., United States Attorney, and R. Craig Lawrence, Assistant United States Attorney.

Before: GINSBURG, Chief Judge, EDWARDS and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

Appellant Marie V. Stella is an employee of the Federal Aviation Administration ("FAA"). She brought claims under the Whistleblower Protection Act of 1989, Pub. L. No. 101-12, 103 Stat. 16 (1989) (codified in scattered sections of 5 U.S.C.) ("WPA"), alleging that the FAA retaliated against her after she disclosed instances of fraud, safety problems, waste, and abuse related to several FAA programs. She also brought claims of sex discrimination under Title VII of the Civil Rights Act of 1964,

42 U.S.C. §§ 2000e *et seq.* ("Title VII"). She claimed, *inter alia,* that discrimination played a role in the FAA's failure to promote her to the Senior Executive Service ("SES") program.

The District Court for the District of Columbia granted the FAA's motion to dismiss appellant's WPA claims for lack of jurisdiction. *See Stella v. Slater,* Civ. Action No. 97-2550, Mem. Op. at 28 (D.D.C. Dec. 8, 2000) ("Mem. Op."). At the time Ms. Stella initiated her action in the District Court, FAA employees were barred from bringing whistleblower claims through the Office of Special Counsel ("OSC") and the Merit Systems Protection Board ("MSPB"), which are the channels that most federal employees are required to follow. Congress recently remedied this situation, however, by passing a law granting jurisdiction for whistleblower claims by FAA employees to the OSC and the MSPB. The new law applies retroactively to Ms. Stella's case. Because she is required to bring her claim to the OSC and MSPB, we affirm the District Court's dismissal of her WPA claims.

The District Court also granted summary judgment for the FAA on the Title VII claims on the ground that Ms. Stella failed to make out a prima facie case of sex discrimination. Mem. Op. at 28. Although appellant had credibly asserted that the FAA failed to promote her to the SES positions for which she had applied, the District Court found that she had not suffered an adverse employment action because both women *and* men had been promoted to the SES positions. *Id.* at 17–18. In so ruling, the District Court applied an incorrect legal standard. In making out a prima facie case of discrimination, a plaintiff need only show that he/she is a member of a protected class, that he/she applied for and was denied an available position for which he/she is qualified, and that, after the rejection, the employer continued to seek applicants who were no more qualified than plaintiff. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (setting forth the elements of a prima facie case under Title VII). A plaintiff is not required to show that the person(s) hired in his/her stead belong to a different gender or race. We therefore reverse the grant of summary judgment and remand the Title VII claims to the District Court.

## I. BACKGROUND

### A. *Alleged Discriminatory and Retaliatory Treatment*

Appellant joined the FAA as a Senior System Engineer in 1991. Am. Compl. ¶ 7, *reprinted in* Joint Appendix ("J.A.") 91–92. She was quickly promoted to the position of Acquisition Oversight Analyst, where she exercised an oversight function for many of the major programs at FAA. Part of her job was to report on problems concerning safety, fraud, mismanagement, and abuse. *Id.* ¶¶ 9–10, *reprinted in* J.A. 92. In 1992, Ms. Stella received an exceptional performance rating and was nominated for awards. Decl. of Marie Stella ("Stella Decl.") ¶ 9, *reprinted in* J.A. 41–42.

In her oversight capacity, appellant identified and reported on serious problems with various major FAA programs. For example, she found improper cost estimates and other irregularities in the FAA's Oceanic Program. She reported these to a supervisor and to the Office of the Inspector General. The contract at issue was eventually terminated in 1999, allegedly for the reasons appellant had pointed out years earlier. Am. Compl. ¶¶ 12–13, *reprinted in* J.A. 92. Ms. Stella also found problems with other programs, including the Advanced Automation Sys-

tem Program. After reporting the problems, Ms. Stella was removed as the senior system engineer for that project. *Id.* ¶ 16, *reprinted in* J.A. 93. She also found major safety, technical, and funding problems with the FAA's "Data Link" program. The Office of the Inspector General is reportedly addressing these problems now, but only after the FAA allegedly expended a billion dollars of federal funds. *Id.* ¶ 17, *reprinted in* J.A. 93-94.

After pointing out these and other instances of fraud, waste, and abuse, appellant allegedly received unwarranted criticism of her work and frequently was removed from oversight positions. She also was excluded from meetings where she had active oversight responsibilities. *Id.* ¶¶ 20-21, *reprinted in* J.A. 95. After appellant reported her findings to the Office of the Inspector General, the representative from that office informed her that her safety was in danger, that she should watch her back, that she should keep her documents in a safe place, and that her career with the FAA was over. *Id.* ¶ 37, *reprinted in* J.A. 98. Ms. Stella alleged that her work computer, desk, house, and barn were broken into, and that the FAA did nothing to address these incidents. *Id.* ¶ 42, *reprinted in* J.A. 99.

Appellant also alleged that she was treated worse than her male co-workers. She alleged that the FAA failed to give her credit for an award she had received, removed her from oversight responsibilities, and assigned her to work for a lower-level male employee. *Id.* ¶¶ 31-33, *reprinted in* J.A. 9697. She alleged that supervisors and colleagues gave her unwarranted bad performance evaluations, made sexually stereotyped remarks about her, and made rude comments regarding equal employment opportunity charges she had filed. *Id.* ¶¶ 25-28, 35, *reprinted in* J.A. 96-97.

Ms. Stella also alleged that the FAA took no corrective action when assorted co-workers and managers used loud sexual language and received pornographic material on the Internet, disseminated offensive e-mails about her, and told her they would not work for a woman and were praying for God to punish her. Stella Decl. ¶¶ 1-4, 14, *reprinted in* J.A. 40-1, 43; Am. Compl. ¶¶ 22-24, *reprinted in* J.A. 95-96.

Appellant alleged that since 1995, she has applied for two SES positions for which she was qualified, but not selected. Am. Compl. ¶ 51, *reprinted in* J.A. 101; Stella Decl. ¶ 8, *reprinted in* J.A. 41. She also applied for lateral transfers to high-visibility program management positions that she alleged would make her more likely to be promoted to SES. Am. Compl. ¶ 51, *reprinted in* J.A. 101; Stella Decl. ¶ 6, *reprinted in* J.A. 41. Less qualified males were selected, and many of the males selected for the lateral transfers have since advanced to SES. Am. Compl. ¶ 51, *reprinted in* J.A. 101.

Finally, appellant pointed to an atmosphere of FAA animus towards women. An SES manager conducted an investigation and found that other women at FAA corroborated appellant's accounts of sex discrimination. Decl. of Loni Czekalski ¶ 5, *reprinted in* J.A. 49-50. The women who were interviewed recounted stories of career opportunities that went to men rather than to women, and of inappropriate remarks about women. *Id.* ¶ 6, *reprinted in* J.A. 50.

## B. *Procedural History*

Appellant filed an action in the District Court for the District of Columbia in 1997, asserting violations of Title VII and the WPA. Appellees moved to dismiss or, in the alternative, for summary judgment. The District Court granted appellees' motion to dismiss the WPA claims for lack of

jurisdiction. Specifically, the court held that under the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century, Pub. L. No. 106-181, 114 Stat. 61 (2000) ("Ford Act"), FAA employees like Ms. Stella are required to exhaust their administrative remedies as set forth in Title 5 of the United States Code. Mem. Op. at 25. Under Title 5, most federal whistleblowers must first bring their complaints to the OSC. *See* 5 U.S.C. § 1214(a)(1)(A) (2000). If the OSC terminates the investigation, then the employee may file a whistleblower claim with the MSPB. *See id.* §§ 1214(a)(3), 1221, 2302(b)(8). The MSPB's decision is appealable to the Court of Appeals for the Federal Circuit. *See id.* § 7703.

When appellant filed her complaint, however, FAA employees were not subject to the usual Title 5 procedures, because, in 1995, Congress had directed the FAA to develop its own personnel management system. Under that system, FAA whistleblower claims could not be brought through the usual route, and the MSPB lacked jurisdiction over FAA employees' claims. When Congress passed the Ford Act in 2000, it enacted a retroactive provision requiring federal employees to exhaust Title 5's administrative remedies. Thus, the District Court found that appellant was required to go through the OSC and the MSPB. Mem. Op. at 24-26. It accordingly dismissed her WPA claims.

The District Court also granted appellees' motion for summary judgment on the Title VII claims. In her Opposition to the FAA's motion, appellant argued, pursuant to Federal Rule of Civil Procedure 56(f), that she could not fully respond to the motion because the FAA had not yet given her certain documents that she requested in discovery, including documentation about the promotions that were given during the relevant time period. Pl.'s Opp. to Def.'s Mot. for Summ. J. (July 31, 2000), at 17. In support of her argument, appellant's attorney submitted a sworn declaration arguing that Ms. Stella had still not received comparator data that would help her establish details concerning who received promotions during the relevant period. Decl. of Gary T. Brown ("Brown Decl.") ¶¶ 8, 10, *reprinted in* J.A. 47-48. The District Court, turning directly to the merits of the FAA's motion for summary judgment, failed to consider Ms. Stella's 56(f) argument.

In addressing appellant's Title VII claim, the District Court found that appellant had not made out a prima facie case. First, it held that most of the conduct she alleged did not amount to an adverse employment action. Mem. Op. at 14. The court found that the derogatory comments and e-mail were not so egregious as to rise to the level of an adverse action. *Id.* at 15 (citing *Childers v. Slater,* 44 F.Supp.2d 8, 20 (D.D.C.1999) *(vacated in part on other grounds,* 197 F.R.D. 185 (D.D.C.2000))). The court also found that appellant's allegations that she received involuntary lateral transfers, and that she was not granted desired lateral transfers, were not adverse employment actions. *Id.* at 15-17 (citing *Brown v. Brody,* 199 F.3d 446 (D.C.Cir. 1999)). Likewise, the court concluded that the unwarranted criticisms and low performance evaluations were not adverse actions, since they did not affect Ms. Stella's grade or salary level. *Id.* at 18 (citing *Brown,* 199 F.3d at 458).

Most importantly, the District Court held that, "[t]o the extent that plaintiff claims her non-selection for certain SES and program manager positions shows disparate treatment under Title VII, plaintiff has failed to show that any of these decisions were based on the plaintiff's gender. The FAA selected male *and* female em-

ployees to fill these positions." *Id.* at 17-18.

Ms. Stella appealed to this court. Appellees moved for summary affirmance. A panel of this court granted summary affirmance as to all of appellant's potential Title VII claims except for those based on the FAA's failure to promote her to the SES positions for which she had applied. The panel found that none of the other events alleged by appellant rises to the level of an adverse employment action. *Stella v. Mineta,* No. 00-5458, Order (May 30, 2001) (citing *Brown v. Brody,* 199 F.3d at 452-53).

## II.  DISCUSSION

### A.  *The Whistleblower Claims*

The District Court correctly dismissed Ms. Stella's WPA claims for want of jurisdiction. At the time appellant's claims arose, she could not bring them to the OSC and the MSPB. Although the Ford Act opened this avenue for FAA employees retroactively to April 1, 1996, appellant argues that the District Court should have asserted jurisdiction to avoid the injustice of sending her back to the OSC and MSPB at this late stage. To understand why the court must reject appellant's argument, we must review the statutory background of the Ford Act.

■■■■  The WPA provides most federal agency employees with protection against agency reprisals for whistleblowing activity, such as disclosing illegal conduct, gross mismanagement, gross wasting of funds, or actions presenting substantial dangers to health and safety. *See* 5 U.S.C. § 2302(b)(8). Under the procedures set forth in Title 5 of the U.S. Code, an employee who believes she is the victim of an unlawful reprisal must first bring her claim to the OSC, which investigates the complaint. *Id.* § 1214; *Weber v. United States,* 209 F.3d 756, 758 (D.C.Cir.2000) (describing whistleblower protection procedures under Title 5). If the OSC finds that there was a prohibited personnel action as defined by § 2302, it reports its findings to the MSPB, and it can petition the MSPB on the employee's behalf. *Weber,* 209 F.3d at 758. If the OSC finds no agency wrongdoing, then the employee herself may bring an action before the MSPB. 5 U.S.C. §§ 1221; 1214(a)(3); *Weber,* 209 F.3d at 758. The MSPB's decision is appealable to the Federal Circuit. 5 U.S.C. § 7703; *Weber,* 209 F.3d at 758. Under no circumstances does the WPA grant the District Court jurisdiction to entertain a whistleblower cause of action brought directly before it in the first instance.

■■■■  Unfortunately for Ms. Stella, the Title 5 avenue was not open to FAA whistleblowers between 1996 and 2000, because Congress, in 1995, enacted the Department of Transportation and Related Agencies Appropriations Act, 1996, Pub.L. No. 104-50, § 347, 109 Stat. 436, 460 (1995), *as amended by* Pub.L. No. 104-122, § 1, 110 Stat. 876, 876 (1996) ("DOT Act"). In the DOT Act, Congress directed the FAA to establish its own personnel management system that would address the "unique demands" of its workforce. *Id.* The FAA accordingly established the FAA Personnel Management System. *See* Federal Aviation Administration Personnel Management System (Mar. 28, 1996), *reprinted in* J.A. 108-49. Under the applicable grievance procedure, an FAA employee in Ms. Stella's position was required to file an internal grievance with her supervisor and then file a formal grievance with a second-line manager. *See id.* Chapter III, § 4, *reprinted in* J.A. 137-41. The decision of the second-line manager was not subject to review in any forum. *Id.* § 4(f)(ii), *reprinted in* J.A. 140.

Nor could an FAA employee in Ms. Stella's position have brought a whistleblower action in the OSC and MSPB, and appealed an adverse decision to the Federal Circuit. Under DOT Act § 347(b), while § 2302's substantive prohibition against reprisals still applied to FAA whistleblowers, the sections of Title 5 providing for OSC and MSPB enforcement jurisdiction over those matters did not. *See* DOT Act § 347(b), 109 Stat. at 460; *Diefenderfer v. MSPB*, 194 F.3d 1275, 1278-79 (Fed.Cir. 1999). Thus, under the DOT Act, FAA employees were "protected against whistleblowing reprisals" in the abstract, but their recourse lay solely "within the FAA personnel system and under its procedures." *Diefenderfer*, 194 F.3d at 1279. It would therefore have been futile for Ms. Stella to bring her claims to the MSPB at the time they arose.

In April, 2000, Congress enacted the Ford Act, amending Title 49 of the U.S. Code. There, Congress provided that FAA employees could submit appeals to the MSPB and seek judicial review of its decisions. Ford Act § 307(a), 114 Stat. at 124-25 (amending 49 U.S.C. § 40122(g)(3)). Congress also provided that FAA employees would once again be subject to the whistleblower protection procedures of Title 5, this time *"including* the provisions for investigation and enforcement as provided in Chapter 12 of title 5." *Id.* (amending 49 U.S.C. § 40122(g)(2)(A)) (emphasis added). Congress made this part of the Ford Act retroactive to April 1, 1996. *Id.* (amending 49 U.S.C. § 40122(g)(4)); *see also Miller v. Dep't of Transp.*, 86 M.S.P.R. 293, 297-98 (2000) (holding that Congress made § 307 of the Ford Act retroactive to April 1, 1996, as an exception to the general effective date for other provisions of the Act).

Since the enactment of the Ford Act, the MSPB has taken the position that it now has jurisdiction over cases of FAA employees for any actions appealable to the MSPB as of March 31, 1996. *See Miller*, 86 M.S.P.R. at 298. The MSPB has also recently clarified that an employee in Ms. Stella's position must file a new complaint with the OSC and allow it to be investigated under the OSC's retroactive Ford Act authority before proceeding to the MSPB. *See Schaefer v. Dep't of Transp.*, 87 M.S.P.R. 37, 42 (2000) (finding that the purpose of the exhaustion requirement would be thwarted if the OSC were not given a chance to investigate the whistleblower's complaint under the retroactive authority given to the OSC by the Ford Act).

From the foregoing, it should be clear that Ms. Stella may now file a new complaint with the OSC, which has retroactive authority under the Ford Act to investigate it. If she is not satisfied with the OSC's disposition of her case, Ms. Stella may proceed to the MSPB, also vested with retroactive authority over the cases of FAA whistleblowers. She may then appeal the MSPB's decision to the Court of Appeals for the Federal Circuit.

Appellant argues that the District Court should have exercised its discretion to excuse her failure to exhaust administrative remedies, given that it was impossible for her to do so at the time the case arose. In so arguing, appellant invokes the fact that had she been able to bring both discrimination and WPA claims to the MSPB as a "mixed case," and had the MSPB rendered an unfavorable decision, appellant could have joined all of her claims and appealed to the District Court. *See* 5 U.S.C. § 7703(b)(2), (c); *Barnes v. Small*, 840 F.2d 972, 979 (D.C.Cir.1988) (stating that where the MSPB decides a case combining discrimination and non-discrimination claims, the District Court takes jurisdiction over appeals from both determina-

tions). The "mixed case" argument does not save appellant's claims, however, because even that route to District Court would have required her to initiate her action at the MSPB, which she did not, and could not, do. Furthermore, because the District Court lacked jurisdiction to hear a whistleblower claim in the first instance, the court lacked the power to excuse Ms. Stella's failure to exhaust her administrative remedies.

Even if the District Court had the discretion to hear Ms. Stella's claims, it did not abuse that discretion by declining to do so. Appellant expresses the concern that her claims will now be stale by MSPB standards, or that there will be some other time bar to her initiating the OSC/MSPB process. At oral argument, the FAA stated its position that there were no time bars to appellant's now bringing her claims to the OSC and the MSPB. The FAA agreed that, under both the Ford Act and the prevailing case law, Ms. Stella's claims are not too old to be pursued before the OSC, MSPB, and, if necessary, the Federal Circuit. The FAA also stated that it would have no jurisdictional objection to Ms. Stella bringing this case to the OSC and going forward with the OSC/MSPB route. Thus, if Ms. Stella follows this route, she has FAA's assurance that the agency will not argue that her claims are untimely or wanting for lack of jurisdiction.

**B.** *The Title VII Prima Facie Case*

█ With respect to appellant's Title VII claims, the District Court concluded that Ms. Stella did not make out a prima facie case of discrimination because the FAA selected both male and female employees to fill the contested SES positions. Mem. Op. at 17-18. In so ruling, the court applied the wrong legal standard for a prima facie case of discrimination. Dis-

crimination against federal employees on the basis of sex is prohibited by 42 U.S.C. § 2000e-16(a), while the more familiar § 2000e-2(a) governs discrimination by private employers. *See Brown,* 199 F.3d at 452. In both contexts, the legal analysis is the same: the familiar burden-shifting test of *McDonnell Douglas. Id.*

█ Under *McDonnell Douglas,* it is the plaintiff's burden to establish a prima facie case of discrimination by a preponderance of the evidence. 411 U.S. at 802, 93 S.Ct. at 1824; *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252-53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the plaintiff establishes a prima facie case, the employer must then articulate a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. The plaintiff must then demonstrate that the employer's stated reason was pretextual and that the true reason was discriminatory. *Id.* at 804, 93 S.Ct. at 1825; *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

█ *McDonnell Douglas* involved a claim of racial discrimination in hiring. The Supreme Court explained that the plaintiff could establish his prima facie case of discrimination by showing that he belonged to a racial minority, that he applied and was qualified for an available position, that he was rejected despite his qualifications, and that, after his rejection, the employer continued to seek applicants who were no more qualified than plaintiff. 411 U.S. at 802, 93 S.Ct. at 1824. The Court never suggested that the plaintiff's prima facie case would automatically be extinguished if the position were filled by someone who was also a member of the plaintiff's protected class. The Court cautioned that, because the facts of Title VII claims vary, its specifications of the prima facie case in *McDonnell Douglas* might

not be applicable to every factual situation. *Id.* at 802 n. 13, 93 S.Ct. at 1824; *see also Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 997, 152 L.Ed.2d 1 (2002) (stating that the requirements of the prima facie case can vary depending on context and "were 'never intended to be rigid, mechanized, or ritualistic' ") (quoting *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978)). This court, like our sister circuits, requires a plaintiff to state a prima facie claim of discrimination by establishing that: "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Brown,* 199 F.3d at 452.

▬▬ The District Court's holding that Ms. Stella was required to show that the SES positions were not filled by women finds no support in *McDonnell Douglas.* In *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 358 n. 44, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), the Court explained the function served by the *McDonnell Douglas* formula. The Court stated that, under *McDonnell Douglas,* a plaintiff must show that his rejection is not attributable to "the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought." *Id.* The Court further explained that "[e]limination of these reasons for the refusal to hire is sufficient, absent other explanation, to create an inference that the decision was a discriminatory one." *Id.* The Court did not discuss the factor relied on by the District Court, and that factor is not relevant to the analysis set forth by the Court in *Teamsters.*

The point was made even more clearly in *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 312, 116 S.Ct. 1307,

134 L.Ed.2d 433 (1996), an age discrimination case. In *O'Connor,* a unanimous Court found the fact that the "plaintiff was replaced by someone outside the protected class" not to be a "proper element of the *McDonnell Douglas* prima facie case." *Id.* Courts of Appeals have applied the Supreme Court's holding in *O'Connor* to the sex discrimination context. In *Pivirotto v. Innovative Systems, Inc.,* 191 F.3d 344, 347 (3d Cir.1999), the Third Circuit "join[ed] seven other circuits in holding that a plaintiff claiming discriminatory firing need not prove, to make out a prima facie case, that she was replaced by someone outside the relevant class" (footnote omitted). The court noted the Supreme Court's oft-recited qualification that an important function of the prima facie case is to weed out the most common lawful reasons for the defendant's action, such as the plaintiff's lack of qualifications or the elimination of the position altogether. *Id.* at 352 (citing *Burdine,* 450 U.S. at 253–54, 101 S.Ct. 1093–94). It also pointed out that even if a plaintiff was replaced by someone within her class, she could still demonstrate that the employer treated her worse than others because she was a member of the protected class. *Id.* at 353. She may have been "treated differently from similarly situated male employees." *Id.* at 353–54.

Nearly every Court of Appeals to consider the issue, both before and after *O'Connor,* has agreed that the fact that an employer replaces a plaintiff with a person from within the same protected class is not, by itself, grounds for dismissing a Title VII claim. *See Perry v. Woodward,* 199 F.3d 1126, 1136–41 (10th Cir.1999), *cert. denied,* 529 U.S. 1110, 120 S.Ct. 1964, 146 L.Ed.2d 796 (2000); *Nieto v. L & H Packing Co.,* 108 F.3d 621, 624 & n. 7 (5th Cir.1997); *Carson v. Bethlehem Steel Corp.,* 82 F.3d 157, 158–59 (7th Cir.1996)

(*per curiam*); *Jackson v. Richards Med. Co.*, 961 F.2d 575, 587 n. 12 (6th Cir.1992); *Cumpiano v. Banco Santander P.R.*, 902 F.2d 148, 154-55 (1st Cir.1990); *Walker v. St. Anthony's Med. Ctr.*, 881 F.2d 554, 558 (8th Cir.1989); *Meiri v. Dacon*, 759 F.2d 989, 995-96 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985); *Howard v. Roadway Express, Inc.*, 726 F.2d 1529, 1534–36 (11th Cir.1984). *But see Brown v. McLean*, 159 F.3d 898, 905 (4th Cir.1998) ("In order to make out a prima facie case of discriminatory termination, a plaintiff must ordinarily show that the position ultimately was filled by someone not a member of the protected class."), *cert. denied*, 526 U.S. 1099, 119 S.Ct. 1577, 143 L.Ed.2d 672 (1999).

This court has not faced the question directly until now. In answering it we hold, in conformity with the overwhelming majority of other circuits to consider the issue, that a plaintiff in a discrimination case need not demonstrate that she was replaced by a person outside her protected class in order to carry her burden of establishing a prima facie case under *McDonnell Douglas*. To the extent the prior decisions of this court have, when reciting the elements of a prima facie case in passing, created confusion on this point, we now clear up such confusion by answering the question we now squarely confront for the first time. *Cf. Cones v. Shalala*, 199 F.3d 512, 517 (D.C.Cir.2000) (stating in *dictum* that a plaintiff establishes a prima facie case by showing that she is female, that she was refused a position for which she applied and was qualified, and that the employer filled the position with a male) (quoting *Kolstad v. Am. Dental Ass'n*, 108 F.3d 1431, 1436 (D.C.Cir.1997), *modified in part on other grounds*, 139 F.3d 958 (D.C.Cir.1998) (*en banc*), *vacated*, 527 U.S. 526, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999)); *cf. also Brown*, 199 F.3d at 451 (approving the District Court's observation that a sex discrimination claim regarding lateral transfers would be baseless because two of the employees selected were women, without discussing the elements of the *McDonnell Douglas* prima facie case).

Thus, although women and men may have been promoted to the SES positions for which Ms. Stella applied, she may nonetheless be able to demonstrate that she received unfavorable treatment in the promotion process because she is a woman. There is no question that failure to promote is an "adverse action" for purposes of the prima facie case. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). We reverse the District Court's holding that because women were promoted to SES positions, appellant could not carry her burden of establishing a prima facie case of discrimination.

## C. *The District Court Should Determine Whether Further Discovery is Necessary*

Appellees argue that even if the District Court applied an erroneous standard in evaluating appellant's prima facie case, the error was harmless because appellant did not come forth with sufficiently specific facts to establish the other elements of her prima facie case: namely, that she applied for open SES positions for which she was qualified and that the FAA passed her over for those promotions while continuing to seek other applicants. Ms. Stella alleged only that she applied for two open SES positions since 1995 for which she was qualified but was not selected. The FAA argues that she was required to give more details, including the names of the positions, the selecting officials, the exact dates, and so on.

We reject this argument. First, appellees conceded at oral argument that addi-

tional specificity is not required for appellant to establish a prima facie case of discrimination. The FAA did not argue that Ms. Stella did not apply for the positions, that she was not qualified for them, or that no one was promoted to SES during the relevant period. Thus, once advised of the correct legal standard, the District Court may conclude that Ms. Stella established her prima facie case by a preponderance of the evidence.

Even if more specificity is required, the District Court should determine in the first instance whether to defer ruling on the motion for summary judgment until those details can be obtained through discovery that appellant has requested. In her Opposition to Defendant's Motion for Summary Judgment, Ms. Stella notified the District Court that the FAA had not responded to her requests for documents, including documents pertaining to the employees who did receive promotions during the relevant time period. Pl.'s Opp. to Def.'s Mot. for Summ. J. at 17. She characterized this request as "relevant comparator data to support that adverse actions occurred." *Id.* In a sworn declaration in support of Ms. Stella's Opposition, her attorney stated that Ms. Stella had sought comparator data on promotions and awards for male employees and documentation pertaining to the people who received promotions during the relevant time period. Brown Decl. ¶¶ 8, 10, *reprinted in* J.A. 47-48. He stated that this information would be "particularly relevant since Defendant has claimed there exists no adverse action and Plaintiff points to her repeated denials of promotions." *Id.* ¶ 10, *reprinted in* J.A. 48.

The District Court granted summary judgment, holding that Ms. Stella could not prevail on her discrimination claim because men and women were promoted to the SES positions for which she had ap-

plied. Mem. Op. at 17-18. It follows from the District Court's reasoning that the requested documents could not have helped her to establish a prima facie case of discrimination. Had the District Court applied the correct legal standard, it may not have granted summary judgment without requiring the FAA to supply the requested data regarding the SES positions that were open during the relevant period and the employees who were chosen to fill those positions. Alternatively, the court might have determined that no additional details were necessary to establish that appellant applied for promotions for which she was qualified and did not receive them.

■■■ District Courts are afforded substantial discretion to manage discovery as they see fit. Moreover, District Courts are afforded discretion in ruling on requests for additional discovery pursuant to Rule 56(f). *See Taylor v. FDIC,* 132 F.3d 753, 765 (D.C.Cir.1997). Having corrected the standard pursuant to which the District Court must evaluate appellant's prima facie case, we remand so that the District Court may determine whether further discovery is called for. If the District Court determines that appellant has submitted facts sufficient to establish a prima facie case, it must proceed with the burden-shifting analysis of *McDonnell Douglas* and evaluate the FAA's proffered reasons for declining to promote Ms. Stella to the SES positions for which she applied. The information requested by appellant may also be relevant in the future in determining whether any reasons the FAA offers for failing to promote Ms. Stella are pretextual. *See generally Paquin v. Fed. Nat'l Mortgage Ass'n,* 119 F.3d 23, 25, 28-29 (D.C.Cir.1997) (reversing the District Court's grant of summary judgment and remanding for further discovery where the plaintiff in an employment discrimination

suit had requested, but had not received, certain comparator data).

### III. CONCLUSION

For the foregoing reasons, we affirm the District Court's dismissal of Ms. Stella's WPA claims, reverse the District Court's grant of summary judgment, and remand to the District Court for further proceedings.