# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued December 9, 2011        Decided July 20, 2012

No. 11-5069

BASSEM YOUSSEF,
APPELLANT

v.

FEDERAL BUREAU OF INVESTIGATION, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:03-cv-01551)

*Stephen M. Kohn* argued the cause for appellant. With him on the briefs were *David K. Colapinto* and *Richard R. Renner*.

*Stephanie R. Marcus*, Attorney, U.S. Department of Justice, argued the cause for appellees. With her on the brief were *Tony West*, Assistant Attorney General, *Ronald C. Machen Jr.*, U.S. Attorney, and *Marleigh D. Dover*, Attorney. *Robert M. Loeb*, Attorney, entered an appearance.

Before: GRIFFITH, *Circuit Judge*, and WILLIAMS and RANDOLPH, *Senior Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

2

GRIFFITH, *Circuit Judge*: Bassem Youssef, an Egyptian-born American citizen, claims that his employer, the Federal Bureau of Investigation, discriminated against him on the basis of his national origin after the terrorist attacks of September 11, 2001, by not placing him in a substantive position dealing with counterterrorism and instead transferring him to a job for which he was dramatically overqualified. He also claims that the FBI retaliated against him when he filed a complaint and spoke to his superiors about his predicament. The district court granted summary judgment against his discrimination claim, but allowed his retaliation claim to be tried by a jury. The jury returned a verdict against Youssef, and the district court denied his motion for a new trial. We affirm the district court's refusal to grant a new trial, but reverse its judgment against Youssef's discrimination claim and remand for further proceedings.

I

This case has a complex factual and procedural background; we recount only the details necessary to our decision. *See Youssef v. FBI*, 541 F. Supp. 2d 121, 128 (D.D.C. 2008). Youssef was born in Egypt and immigrated to the United States in 1972, when he was thirteen years old. A native Arabic speaker, Youssef has worked for the FBI since 1988. In the first eight years of his career, Youssef worked on a variety of counterterrorism investigations and received high praise from his supervisors. In 1996, he was promoted to the position of Legal Attaché in Riyadh, Saudi Arabia, where he served as a liaison to local law enforcement authorities and helped improve relations between the FBI and its Saudi counterpart, the Mahabith. As he had before, Youssef once again received excellent performance reviews. In July 2000, he returned to the United States and was detailed by the FBI to the National Counterintelligence Center of the CIA

(NACIC), where, as Chief of the Executive Secretariat Office, he coordinated the activities of a number of multi-agency groups supporting the counterintelligence community.

In February 2001, President George W. Bush dismantled the NACIC and created a new organization to take its place: the National Counterintelligence Executive (NCIX). Because Youssef's position at the NACIC no longer existed, the FBI detailed him to a temporary position at the NCIX where he was responsible for assessing how disclosure of national security information harmed the government's counterintelligence capacity. Youssef remained at the NCIX until March 2002, when he was transferred to a temporary position in DocEx, a new program within the Counterterrorism Division of the FBI charged with the processing and review of written materials recovered in Afghanistan and Pakistan.

Youssef asserts his work in DocEx primarily required him to "'bag and tag' evidence at an offsite facility," and his "responsibilities were limited to sitting at a desk sifting through piles of potentially worthless paper in the hope that some intelligence value could be gleaned." Appellant's Br. 58; *see also* Pl.'s Stmt. ¶ 184 (describing one of Youssef's main tasks at DocEx as "cataloging [documents], i.e. as [in] putting an identifying number or serial number on a document before storing the document as original evidence"). The FBI disputes that his duties at DocEx consisted of menial responsibilities and describes his work instead as identifying and analyzing information contained in captured documents that related to the threat of future terrorist attacks against the United States. Appellee's Br. 36.

Youssef believes that in the aftermath of the attacks of September 11th the FBI should have put his experience and

language skills to use in a critical counterterrorism position. Instead, he was moved to his position at DocEx based on rumors that he had refused to carry out orders while in Saudi Arabia because of his Muslim faith and that he had worn "traditional Arabic head-gear." *Youssef*, 541 F. Supp. 2d at 131-32. If such rumors circulated, which the FBI disputes, they were untrue: Youssef is a Coptic Christian and the story of the garb was about a different FBI agent with a "similar-sounding" name. *Id.*

On June 28, 2002, Youssef met with his Member of Congress, Frank Wolf, and FBI Director Robert Mueller in the congressman's office. Youssef explained that he was "uniquely qualified" to help the FBI, but that he was being kept from more important responsibilities at the Bureau because of his national origin. *Id.* at 133. On July 10, 2002, Youssef filed a complaint with the Equal Employment Opportunity Commission (EEOC). *Id.* In August 2002, he applied for and received a promotion to be the Unit Chief of DocEx, where he remained until he made a lateral move in November 2004 to become the Unit Chief of the Communications Analysis Unit, a sister unit of DocEx that focuses on electronic records.[1] *Id.* On January 9, 2003, the EEOC sent Youssef a letter stating that it would investigate his complaint further. *Id.* On July 18, 2003, having received no final decision on his complaint from the EEOC, Youssef sued in federal district court, *see* 42 U.S.C. § 2000e-5(f), alleging that the FBI had discriminated against him by failing to give him substantive counterterrorism work and instead assigning him for seven months to a job in DocEx that was

---

[1] We received no briefing on Youssef's duties as Unit Chief of the Communications Analysis Unit because he did not argue that his transfer there was discriminatory or retaliatory. *See Youssef*, 541 F. Supp. 2d at 133 n.12.

well below his expertise and grade level. Pl.'s Compl. ¶¶ 94-98.

While in the Communications Analysis Unit, Youssef twice asked permission to take several weeks leave to participate in inspections of FBI offices. The inspections are performed by senior FBI special agents who "monitor [the office's] compliance with the Bureau's policies, procedures, and administrative requirements." *Youssef*, 541 F. Supp. 2d at 135. Participating in these exercises is required to become "inspection certified," which can be helpful in "obtaining future promotions." *Youssef v. FBI*, 762 F. Supp. 2d 76, 78-80 (D.D.C. 2011). Youssef's requests were denied. Youssef amended his complaint to allege that these denials were retaliation for his EEO filing, taking his grievances to Director Mueller, and other protected activity such as attending witness depositions in his discrimination case. *Id.* at 79.

In 2008, the district court entered summary judgment against his discrimination claim, concluding that Youssef had shown only that he was not permitted to "perform the work he desired," which falls short of a claim that he suffered materially adverse action at work.[2] *Youssef*, 541 F. Supp. 2d at 164. His retaliation claim was tried to a jury. *Youssef*, 762 F. Supp. 2d at 78. On September 27, 2010, the jury returned a special verdict, finding that Youssef had failed to show that the FBI's denial of leave to participate in the inspections was a materially adverse action. The district court later denied Youssef's motion for a new trial. *Id.* at 79. Youssef now appeals the summary judgment against his discrimination

---

[2] The district court also entered summary judgment against Youssef on other discrimination claims, which are not relevant to this appeal. *Youssef*, 541 F. Supp. 2d at 133-35.

claim and the denial of his motion for a new trial. We take jurisdiction under 28 U.S.C. § 1291.

## II

Title VII provides, in relevant part, that all personnel actions affecting employees of the federal government "shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). To allege a *prima facie* case, a plaintiff must show that he "is a member of a protected class," that he "suffered an adverse employment action," and that "the unfavorable action gives rise to an inference of discrimination." *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002) (quoting *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999)) (internal quotation marks omitted). There is no dispute that as an Egyptian-born American citizen, Youssef is a member of a protected class. The controversy is whether he suffered a materially adverse employment action from which discrimination can reasonably be inferred. We review the district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to Youssef. *See McCready v. Nicholson*, 465 F.3d 1, 7 (D.C. Cir. 2006).

When a Title VII plaintiff rests a claim of materially adverse action on a transfer that does not involve loss of pay or benefits, a court must determine if there were "materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm." *Brown*, 199 F.3d at 457. We have previously held that "reassignment with significantly different responsibilities . . . generally indicates an adverse action," *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006)

(quoting *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002)) (internal quotation marks omitted), and Youssef alleged that such a reassignment occurred. In his complaint, Youssef alleged that his position in DocEx "[did] not utilize [his] skills and expertise" and that "his primary duty was to tag and process evidence at an offsite facility" located in the basement of a Virginia warehouse, Pl.'s First Am. Compl. ¶ 98; Defs.' Mot. Summ. J. Ex. 8, at 18. He also claimed that one of his co-workers at DocEx was a Grade Level 11 non-agent (four levels below his), Pl.'s Aff. ¶ 118, May 12, 2006, and that his supervisors were grade levels below him, "a situation [he] had never encountered throughout [his] entire Bureau career," *id.* Unlike the two positions he held prior to his transfer, at DocEx he supervised no one. Appellant's Reply Br. 14. We conclude that a reasonable juror could find that Youssef "experience[d] an extraordinary reduction in responsibilities" constituting materially adverse action under Title VII. *Holcomb*, 433 F.3d at 902.[3]

The FBI argues that placing Youssef at DocEx could not have been a materially adverse action because he was

---

[3] The FBI and Youssef disagree over whether the relevant baseline for comparison was his detail to the NACIC or his temporary position at the NCIX. We need not resolve that issue because a reasonable trier of fact could conclude that Youssef's transfer from NCIX to DocEx constituted materially adverse action. At NCIX he supervised an agent and – unlike DocEx – did not report to agents whose grade levels were below his. *See* Appellant's Reply Br. 26. There is also no evidence that he did the same work as a GS-11 non-agent at NCIX; indeed, the FBI described Youssef's position there as "high profile," Def.'s Mot. For Summ. J. ¶ 18. And Youssef claims that, as a result of his placement in DocEx, he could not successfully compete for positions outside the Unit. *See* Appellant's Reply Br. 26.

subsequently promoted to Unit Chief. Appellees' Br. 35, 39. But making the best of a bad situation should not be held against a claimant, and seeking a promotion within DocEx does not mean that Youssef forfeited his Title VII claim. Even if the position of Unit Chief was a match for Youssef's skill and experience, on which we express no opinion, his promotion cannot retroactively immunize his transfer to substandard work for seven months.[4]

We next consider whether Youssef's showing "gives rise to an inference of discrimination." *Stella*, 284 F.3d at 145. In making this determination, we use the *McDonnell Douglas* factors. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Once a plaintiff makes out a prima facie case of discrimination, the burden shifts to the defendant to prove that "the adverse employment actions were taken for a legitimate, nondiscriminatory reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (quoting *Tax Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)) (internal quotation marks omitted). Before the district court and us, the FBI has trained its argument on the nature of the position to which Youssef was transferred, not the reason for which he was transferred. Although the FBI mentioned a potential justification for the move, *see* Defs.' Mot. Summ. J. 12-14 (stating that DocEx's supervisor "had identified a need for an agent with CT experience who could not only read a

---

[4] Much of the briefing concerned whether the FBI's failure to place Youssef in a suitable counterterrorism position after September 11, 2001, by itself qualified as materially adverse action. However, because we conclude that Youssef has credibly alleged that his placement in DocEx constituted materially adverse action, we need not consider whether the FBI's failure to place him elsewhere (including, as he argues, failure to promote him in the intelligence build-up following September 11), if taken alone, did so as well.

document before its translation, but also understand the potential investigative significance of the information contained therein"), the district court had no need to consider whether the explanation was pretextual, having already concluded that the transfer was not materially adverse, *see Youssef*, 541 F. Supp. 2d at 164-65, and so it did not examine Youssef's proffered evidence of discriminatory motive. *See* Appellant's Br. 22-25 (discussing false rumors about Youssef's disloyalty "arising from [his] national origin" that allegedly led to his placement in DocEx). Because the district court did not reach this fact-intensive issue, and the parties did not fully brief it to us, we remand for further examination of the FBI's reason for the transfer.

III

The jury entered a special verdict finding that Youssef "had not proven by a preponderance of the evidence that the denial of permission to participate in inspections of FBI offices was a materially adverse action." *Youssef*, 762 F. Supp. 2d at 79. In other words, the jury found that the FBI's refusal to give Youssef time off had not hampered his career even though he claimed that participating in these inspections was needed for future promotions. Youssef argues that the district court abused its discretion by entering the jury's verdict and denying his motion for a new trial. We disagree.

"The jury verdict stands 'unless the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not disagree on the verdict.'" *Czekalski v. LaHood*, 589 F.3d 449, 456 (D.C. Cir. 2009) (quoting *Curry v. District of Columbia*, 195 F.3d 654, 658-59 (D.C. Cir. 1999)). Here, there is much evidence to support the jury's finding. Witnesses testified that these inspections typically occur twice a month. Missing two

inspections was not a major setback for Youssef because there were many more he could attend. *See Youssef*, 762 F. Supp. 2d at 81. The jury also heard testimony that inspection certification was just one of many prerequisites for promotion, and Youssef had not completed all of them. A slight delay in inspection certification would not significantly diminish his opportunities for promotion. *Id.* 81-82. The FBI also introduced evidence that Youssef could have submitted paperwork that would have required his supervisors to allow him leave to complete the inspection, but that he had never pursued that alternative. *Id.* at 82. Furthermore, "denials of requests to attend inspections would not harm an agent's reputation because a denial was usually due to a conflict with work schedules." *Id.* Lastly, the record showed that "the FBI planned to arrange for Youssef to go on another inspection some time after his first requests were denied." *Id.* Given this evidence, a reasonable juror could have found that the denial of leave was not a materially adverse action.

IV

For the foregoing reasons, the judgment of the district court denying Youssef's claim that his transfer to DocEx violated Title VII is *reversed* and *remanded*, and the district court's order denying his motion for a new trial is *affirmed*.

*So ordered*.