Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

#### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued March 15, 2004          Decided May 7, 2003

No. 03-7022

LILLIE TENEYCK,
APPELLANT

v.

OMNI SHOREHAM HOTEL,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 99cv03315)

———

*William S. Stancil* argued *pro hac vice* for appellant. On the briefs was *Lillie Teneyck, pro se.*

*Scot A. Hinshaw* argued the cause for appellee. With him on the brief was *A. Neal Barkus.*

Before: EDWARDS and HENDERSON, *Circuit Judges,* and WILLIAMS, *Senior Circuit Judge.*

Opinion for the Court filed by *Circuit Judge* EDWARDS.

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

EDWARDS, *Circuit Judge*: Appellant Lillie Teneyck applied for a position as a housekeeper at the Omni Shoreham Hotel, in Washington, D.C. Teneyck alleges that Omni hired her for the position, but then turned her away before assigning her any work. Teneyck brought suit in the District Court, claiming that Omni had discriminated against her on the basis of her race and national origin, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (2000), and on the basis of her age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634 (2000). The suit proceeded to trial and, after Teneyck rested her case before the jury, Omni moved for judgment as a matter of law. The District Court granted judgment to Omni on all claims, holding that Teneyck had failed to present evidence sufficient to make out a prima facie case of national-origin, race, or age discrimination.

We affirm the judgment for Omni as to all claims. Teneyck expressly conceded below that she did not offer sufficient evidence to support her national-origin discrimination claim. That claim was thus waived and is not before us. Although some aspects of the District Court's treatment of Teneyck's race discrimination claim are problematic, our *de novo* review of the record makes clear that Teneyck offered no evidence indicating that the position for which she applied remained open or that Omni continued to seek applicants of her qualifications. Consequently, she failed to establish one of the key elements of a prima facie case for a Title VII failure-to-hire claim, as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Finally, by failing to adduce any evidence suggesting that she was disadvantaged in favor of a younger person, Teneyck failed to establish a required element of a prima facie case of age discrimination under the ADEA. We find no merit in Teneyck's claim, raised for the first time on appeal, that she was denied a fair trial because of the District Court's allegedly hurried management of the trial proceedings.

## I. BACKGROUND

In September 1996, Teneyck applied for a job as a house-keeper at Omni. The parties agree that Teneyck either was not hired or was hired but not permitted to work. On October 2, 1996, Teneyck filed a race and age discrimination complaint against Omni with the District of Columbia Department of Human Rights and Local Business Development ("Department"), the predecessor of the Office of Human Rights. The complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). After an investigation, the Department issued a finding of no probable cause. The EEOC adopted the Department's findings and, in September 1999, issued Teneyck a right-to-sue letter.

Teneyck filed suit against Omni in the District Court on December 14, 1999, proceeding *pro se*. The court appointed counsel for Teneyck, though she ultimately retained her own counsel. She later filed an amended complaint, asserting claims of race and national-origin discrimination, under Title VII, and age discrimination, under the ADEA. After conducting some discovery, Omni moved for summary judgment on all claims, arguing that Teneyck had failed to make out a prima facie case of discrimination under Title VII or the ADEA. The District Court denied Omni's motion. *See Teneyck v. Omni Shoreham Hotel*, Civ. Action No. 99-3315 (D.D.C. Sept. 6, 2002). The court found that Teneyck had established a prima facie case as to all claims, and that there remained a genuine issue of material fact as to Omni's asserted reason for not hiring Teneyck, *i.e.*, that she allegedly was unable to work Sundays. *Id.*, slip op. at 5-7.

The trial began on Tuesday, January 28, 2003. The judge informed the jury at the outset of the proceedings that he had some other obligations to which he would need to attend during the trial. First, he indicated that he would have to take a brief recess later that day – which he did – to confer with a jury that was still deliberating in a criminal trial over which he was presiding. January 28, 2003 Tr. ("Tr. I") at 93, 114. The judge also said that he might have to leave around 4:00 p.m. that day to attend his daughter's basketball game.

*Id.* at 93. As it turned out, the game was canceled and the court did not recess until 5:06 p.m. *Id.* at 144-45, 177. Finally, the judge explained that the trial could not proceed on Friday, January 31, 2003, because the judge had a medical procedure scheduled for that day. *Id.* at 94. If necessary, he said, the trial could continue into the following week. *Id.* Teneyck's counsel voiced no objection to any of the scheduling issues raised by the judge.

Before the trial commenced, counsel for Omni told the judge that one of Omni's key witnesses was present but needed to be in Boston, Massachusetts, the following day for work. Counsel requested to put the witness on the stand on the first day of trial, so that she would not have to stay overnight in Washington. *Id.* at 94-95. Teneyck's counsel said that Teneyck's case-in-chief would require a couple of hours. *Id.* at 95. The judge then indicated that he would try to get Omni's witness on the stand that day. *Id.* Teneyck's counsel raised no objection.

Teneyck testified on her own behalf as the sole witness in her case-in-chief. She offered the following testimony relevant to this appeal. Teneyck was 68 years of age at the time of trial. *Id.* at 106. In September of 1996, she applied for a part-time position as a housekeeper with Omni. *Id.* at 107, 121. At the time she applied for the position, Teneyck was preparing to retire from her job with the federal government, where she had worked for over 20 years. *Id.* at 111, 114, 130. Teneyck explained that she applied for the position in order to supplement her retirement income. *Id.* at 115-16. She had worked for Omni as a housekeeper from 1965 to 1970, prior to taking a job with the government. *Id.* at 106-07, 120.

Teneyck inquired about part-time housekeeping work at Omni's personnel office and was directed to a vacancy notice for a part-time position, which was posted on a bulletin board in the office. *Id.* at 108. She filled out an application, indicating her age as 61, and gave it to a "clerk." *Id.* at 108-09, 128. The clerk was one of two Black women in the office, both of whom Teneyck characterized as "nice and friendly." *Id.* at 121-22. Teneyck understood from her conversation

with one of these women that she was hired for the part-time housekeeping position. *Id.* at 109. The clerk then called Omni's Executive Housekeeper, who met with Teneyck in a side room in the office for about 20 minutes. *Id.* at 109-10, 122. Teneyck understood the purpose of this meeting to be to explain her duties and to tell her when to come to work. *Id.* at 109. She offered no testimony as to the race, national origin, or age of the Executive Housekeeper.

Teneyck described the ensuing interview, as follows: The Executive Housekeeper asked: "Why would you want to clean, want this type of job if you just came from the Government? Why do you want to do this work?" *Id.* at 110. Teneyck responded that she had worked as a housekeeper at Omni before and did not mind the work. *Id.* The Executive Housekeeper told Teneyck that the position was full time and would pay minimum wage and that she would not have insurance or benefits. *Id.* at 110-11. Teneyck assured her that she still wanted the job, and the Executive Housekeeper instructed Teneyck to call her back the next day to find out when to start. *Id.* at 111-12. When she called the next day, however, the Executive Housekeeper hung up on her. *Id.* at 112-13, 116. Teneyck called again a couple of hours later and asked for the Executive Housekeeper, but the Executive Housekeeper refused to speak with her. *Id.* Teneyck did not call Omni again or return to inquire about the position for which she had applied. *Id.* at 113, 126-27. She never found out whether the job remained open or, if so, who Omni hired for the position. *Id.* at 120.

Teneyck testified that the Executive Housekeeper never asked her whether she could work weekends. *Id.* at 111. Teneyck stated that she expected to work Saturdays and Sundays as part of the position, that she had worked Saturdays and Sundays while working for the government, and that she was not attending church at the time such that she would have any problem with working on Sundays. *Id.* at 111, 114-15, 148. On cross-examination, counsel for Omni asked whether Teneyck was "aware that the Omni Shoreham didn't hire [her] because they claimed that [she] said [she] couldn't work on Sundays." *Id.* at 128-29. She responded:

"That's not true. . . . I am aware that they said that, but it is not true." *Id.* at 129.

After Teneyck's testimony on direct, cross-, and redirect examination was complete, the trial judge asked Teneyck's counsel whether he had any other evidence. Counsel responded that Teneyck was prepared to rest her case except for rebuttal. *Id.* at 151. The judge again asked whether Teneyck was prepared to rest her case-in-chief, and counsel answered in the affirmative. *Id.* Omni then moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a) on the grounds that Teneyck had not presented any evidence from which a reasonable jury could infer discrimination and therefore failed to make out a prima facie case. *Id.* at 152. The judge heard some argument on the motion but "reserved" ruling on it until the following day, in order to allow Omni's first witness to testify before she returned to Boston that evening. *Id.* at 156. The judge at this point addressed Teneyck's counsel:

> I will have you rest before the jury. I will go ahead and hear this testimony so we can finish that before the end of the day with the understanding that I am still reserving my ruling on whether the Motion to Dismiss [*i.e.*, the Rule 50(a) motion] is appropriate and I will hear that tomorrow even though I have started to hear evidence or testimony from the Defendant only because we have got a problem, [a] logistical problem, with the witness' availability.

*Id.* Counsel agreed and proceeded to rest Teneyck's case before the jury. *Id.* at 156-57.

Omni's witness – Omni's former Executive Housekeeper Freiweini Kahasay – then took the stand. She explained the interview process for housekeepers at Omni and then testified about her interview with Teneyck in September 1996. *Id.* at 159-64. Kahasay stated that at the time she was "in desperate need of hiring people for that position." *Id.* at 164. She recalled having a 10-minute interview with Teneyck, and stated that Teneyck had said during the interview that she could not work Sundays because she had church responsibili-

ties. *Id.* at 164-66. Kahasay explained that she instructed her colleague in the Human Resources Department, Paula Nesmith, to mark Teneyck's application as a "no," because Teneyck was unable to work Sundays. *Id.* at 167. Apart from this problem, Kahasay said, she would have hired Teneyck. *Id.* Kahasay did not recall Teneyck calling the following day, but said that the normal procedure if an applicant called would be to refer the applicant to Human Resources. *Id.* at 168. Kahasay said she had hired someone for the position for which Teneyck applied, and that she had hired a Black woman for at least one of the four part-time housekeeping positions available at the time. *Id.* at 168-69. After Teneyck's counsel cross-examined Kahasay, court was adjourned.

The following morning, the District Court heard argument on the Rule 50(a) motion. Teneyck's counsel sought to rely on the testimony of Omni's lone witness, but the court would not permit it. The trial judge engaged counsel in the following colloquy:

> The Court: I only went forward with [the defendant's] case, where [the testimony in question] came out, because we were trying to accommodate the witness.
>
> Mr. Stancil: Well, that is now on the record.
>
> The Court: No. No. No. Remember what I said. I said I am going to make my ruling based upon – only because of the time circumstances, I didn't address the issue of the motion prior to that witness testifying. So I don't think you gain the benefit of me having let that witness testify to accommodate the witness so that she could go to Boston. I think your case rises or falls based upon what you presented in your case in chief.
>
> Mr. Stancil: All right . . . .

January 29, 2003 Tr. ("Tr. II") at 6. During the ensuing discussion, Teneyck's counsel conceded that Teneyck had not offered sufficient evidence to establish her national-origin

claim. *Id.* at 10. After further argument on the race and age discrimination claims, the court granted Omni's motion for judgment as a matter of law. *Id.* at 30.

On March 19, 2003, the District Court issued an order and memorandum opinion to this effect. *Teneyck v. Omni Shoreham Hotel*, Civ. Action No. 99-3315 (D.D.C. Mar. 19, 2003). The court dismissed the national-origin discrimination claim on the basis of Teneyck's counsel's concession of that claim. *Id.*, slip op. at 1 n.1. The court granted judgment as a matter of law to Omni on the race and age discrimination claims, finding that Teneyck had not proffered sufficient evidence from which discrimination could be inferred. *Id.* at 6-9. Teneyck appealed, proceeding *pro se* with pro bono assistance from her trial counsel.

## II. Discussion

### A. Judgment As a Matter of Law Under Rule 50(a)

Rule 50(a) provides in relevant part that,

> [i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law. . . .

FED. R. CIV. P. 50(a)(1). A Rule 50(a) motion must specify not only the judgment sought, but also "the law and the facts on which the moving party is entitled to the judgment." FED. R. CIV. P. 50(a)(2).

Rule 50(a) has two primary and interrelated purposes. It permits the court to avoid the time and expense of trial on issues or claims that lack a legally sufficient evidentiary basis. *See* FED. R. CIV. P. 50 (Advisory Committee Note on the 1991 Amendment); 9 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 50.02 (3d ed. 2004). At the same time, a Rule 50(a) motion gives the court and the nonmoving party notice of any deficiencies in the nonmoving party's case at a time when such deficiencies can still be corrected. *See id.*

As a general matter, a party has been "fully heard" for purposes of Rule 50(a) when the party has submitted all of its evidence on the relevant claim or issue. *See* 9 MOORE ET AL., *supra*, § 50.20[2]. Accordingly, a defendant may move for judgment as a matter of law at the close of the plaintiff's evidence. *Id.* The drafters of the 1991 amendment to Rule 50 emphasized, however, that "[i]n no event" should judgment be granted under Rule 50(a) unless the nonmoving party has "been apprised of the materiality of the dispositive fact and been afforded an opportunity to present any available evidence bearing on that fact." FED. R. CIV. P. 50 (Advisory Committee Note on the 1991 Amendment); *see also Waters v. Young*, 100 F.3d 1437, 1441 (9th Cir. 1996). Relatedly, a party who has rested may move to reopen her case in order to cure an evidentiary deficiency identified in a Rule 50(a) motion. *See, e.g.*, *Garcia v. Woman's Hosp. of Tex.*, 97 F.3d 810, 813-14 (5th Cir. 1996).

We review *de novo* the grant of judgment as a matter of law pursuant to Rule 50(a). *Borgo v. Goldin*, 204 F.3d 251, 254 (D.C. Cir. 2000). In so doing, we must draw all reasonable inferences from the evidence in favor of the nonmoving party, and we must not weigh the evidence or assess witness credibility. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Borgo*, 204 F.3d at 254. With these standards in mind, we turn to the substance of the case before us.

## B. Title VII Claims

### 1. *The Legal Framework Under Title VII*

Title VII provides, in relevant part, that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). In the absence of direct evidence of discrimination, disparate-treatment claims under Title VII are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The *McDonnell Douglas* framework

establishes "an allocation of the burden of production and an order for the presentation of proof" in such cases. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).

Under this framework, the plaintiff must first establish, by a preponderance of the evidence, a "prima facie case" of discrimination. The burden of doing so is "not onerous." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). *McDonnell Douglas* identified the paradigmatic elements of a prima facie case in a Title VII claim involving a failure to hire. Under this formulation, the plaintiff must show:

> (i) that he belongs to a [protected class]; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that after his rejection, the position remained open and the employer continued to seek applicants from persons of [the plaintiff's] qualifications.

*McDonnell Douglas*, 411 U.S. at 802.

The Supreme Court has emphasized that the *McDonnell Douglas* model of the prima facie case is not intended to be "rigid, mechanized, or ritualistic" and that its requirements can vary depending upon the factual context. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978)). With this in mind, the court in *Stella v. Mineta* articulated an alternative formulation of the Title VII prima facie case, pursuant to which a plaintiff must establish that "(1) she is a member of the protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." 284 F.3d 135, 145 (D.C. Cir. 2002) (quoting *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999)). This alternative formulation is designed to accommodate the wide variety of employment discrimination claims that extend beyond the typical "failure-to-hire" situations of the sort confronted in *McDonnell Douglas*. However, the formula articulated in *Stella* does not supplant *McDonnell Douglas*'s paradigmatic elements of a prima facie case. *McDonnell*

*Douglas*'s formulation of the required elements of a prima facie case remains the standard in typical failure-to-hire cases. *See, e.g.*, *Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 650 (D.C. Cir.), *cert. denied*, 124 S. Ct. 325 (2003).

The decision in *Stella* also held that a plaintiff in a Title VII case is not required to show that she was disadvantaged in favor of a person outside of the protected class. 284 F.3d at 146. In other words, in order to make out a prima facie case, it is not necessary for an African-American plaintiff to show that she was disadvantaged by the employer's hiring of a Caucasian applicant, or for a female plaintiff to show that a male was hired in her stead. In reaching this result, *Stella* adopted the position followed by the vast majority of our sister circuits that have ruled on this issue. *Id.* at 145-46. The employer's hiring of a person of the same race or sex as the plaintiff might be relevant in assessing the merits of a plaintiff's claim beyond the stage of the prima facie case, but it is not a factor in the plaintiff's establishment of a prima facie case. As the Third Circuit noted in *Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344 (3d Cir. 1999), even if a plaintiff is replaced by someone within her class, she could still demonstrate that the employer treated her worse than others because she was a member of the protected class. *Id.* at 353. For example, a female employee may have been "treated differently from similarly situated male employees." *Id.* at 353-54.

*McDonnell Douglas* principally demands "that the alleged discriminatee demonstrate at least that his rejection did not result from the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 n.44 (1977). As the Supreme Court has noted, "[e]limination of these reasons for the refusal to hire is sufficient, absent other explanation, to create an inference that the decision was a discriminatory one." *Id.* Therefore, to require a Title VII plaintiff to show that someone outside of her protected class was hired or promoted in her stead

would be to graft an additional element onto the *McDonnell Douglas* model of the prima facie case. *Stella* forecloses this possibility.

Once a prima facie case has been established, "the plaintiff in a Title VII action creates a rebuttable 'presumption that the employer unlawfully discriminated against' him." *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 (1983) (quoting *Burdine*, 450 U.S. at 254). Establishment of a prima facie case triggers the employer's burden to produce admissible evidence that, if believed, would establish that the employer's action was motivated by a legitimate, nondiscriminatory reason. *Burdine*, 450 U.S. at 254-56. The employer's burden is one of production, not persuasion. *Id.*

When the employer meets this burden, "the *McDonnell Douglas* framework – with its presumptions and burdens – disappear[s], and the sole remaining issue [i]s discrimination *vel non*." *Reeves*, 530 U.S. at 142-43 (internal quotation marks and citations omitted). The plaintiff at this point must be given an opportunity to prove that the employer's professed reason for its actions is, in fact, a pretext for discrimination. If the factfinder rejects the defendant's proffered explanation, this permits – but does not compel – the factfinder "to infer the ultimate fact of intentional discrimination." *St. Mary's Honor Ctr.*, 509 U.S. at 511.

The ultimate question, once the employer has met its evidentiary burden, is whether intentional discrimination may be inferred from all the evidence before the trier of fact. This includes "(1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanations for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer)." *Dunaway v. Int'l Bhd. of Teamsters*, 310 F.3d 758, 763 (D.C. Cir. 2002) (quoting *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 993 (D.C. Cir. 2002)). However, if the plaintiff establishes the elements of a prima facie case, and the defendant remains silent or otherwise fails to meet its burden of production, judgment must be

rendered for the plaintiff. *Burdine*, 450 U.S. at 254; *see also St. Mary's Honor Ctr.*, 509 U.S. at 510 n.3.

2. *Application of the Legal Framework to the Facts of this Case*

Teneyck expressly conceded below that she had not established a prima facie case of national-origin discrimination, so that claim is not before this court on appeal. What is at issue here is whether Teneyck met her initial burden of establishing a prima facie case of race discrimination under Title VII. Because Omni moved for judgment as a matter of law at the close of Teneyck's case-in-chief – before Omni presented any evidence of its own – we are not confronted with the ultimate question of whether Omni intentionally discriminated against Teneyck. The precise question before us, in reviewing the District Court's grant of judgment as a matter of law, is whether Teneyck provided a "legally sufficient evidentiary basis for a reasonable jury to find" that she had established the elements of a prima facie case. *See* FED. R. CIV. P. 50(a). We find that she did not.

It is undisputed that Teneyck offered testimony on the basis of which a reasonable jury could find the first three elements of the *McDonnell Douglas* prima facie case. She is a member of a protected class: While she did not testify as to her race, the District Court noted, and Omni concedes, that the jury could see that she is Black. Tr. II at 13; Appellee's Br. at 9 & n.3. As Omni likewise concedes, Teneyck testified that she applied for a housekeeping position for which she was qualified and that she was turned away before being given any work. Tr. I at 109-13; Appellee's Br. at 13.

Teneyck failed, however, to provide any evidence establishing the fourth *McDonnell Douglas* element: that the position remained open after Teneyck was turned away and that Omni continued to seek applicants of her qualifications. Teneyck testified that, after the Executive Housekeeper refused to speak to her when Teneyck called to be assigned work, Teneyck never made any further attempt to contact Omni about the position. Tr. I at 126-27. Teneyck offered no testimony as to whether the position remained open or wheth-

er Omni continued to seek applicants of her qualifications. She stated only that she never found out who Omni hired for the position. *Id.* at 120. By not offering any evidence in support of the fourth *McDonnell Douglas* element, Teneyck failed to eliminate one of the most common legitimate nondiscriminatory reasons for a failure to hire: the absence of a vacancy. *See Stella*, 284 F.3d at 145.

In arguing the Rule 50(a) motion before the District Court, counsel for Omni clearly identified this specific deficiency as one of the grounds upon which judgment as a matter of law for Omni was warranted. Tr. II at 16-17. Teneyck's counsel made no attempt to move to reopen Teneyck's case-in-chief so as to provide evidence on this or any other issue. Accordingly, Omni was entitled to judgment as a matter of law based on the evidence put forward in Teneyck's case-in-chief.

Having reached this conclusion, we note that the District Court did not appear to base its judgment on the absence of evidence establishing the fourth *McDonnell Douglas* element. Indeed, the District Court's treatment of this issue is somewhat perplexing, so some clarification of the law is in order. Without reference to the specific *McDonnell Douglas* elements, the District Court noted in dicta that "at most, Teneyck's testimony eliminated 'the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought.'" *Teneyck*, slip op. at 6 (quoting *Int'l Bhd. of Teamsters*, 431 U.S. at 358 n.44). The District Court nevertheless concluded that Teneyck had offered no evidence from which it could be inferred that she was discriminated against because of her race. *Id.* at 7.

These statements, taken in conjunction, reveal a misconception of the requisite elements of a prima facie case and of Teneyck's burden at this stage of the proceedings. *If* Teneyck had shown that Omni kept the position open and continued to seek applicants of her qualifications, then it would be proper to conclude that there was a continuing vacancy. This, along with the undisputed evidence as to the first three *McDonnell Douglas* elements, would have sufficed to estab-

lish a prima facie case, triggering a legally mandatory, rebuttable presumption of discrimination.

Establishment of the elements of a prima facie case "raises an inference of discrimination . . . because we presume [the employer's] acts, *if otherwise unexplained*, are more likely than not based on the consideration of impermissible factors." *Burdine*, 450 U.S. at 254 (quoting *Furnco Constr. Corp.*, 438 U.S. at 577) (emphasis added). The issue of whether the plaintiff has established a prima facie case, therefore, is quite distinct from the ultimate inquiry as to "discrimination *vel non*" required after the defendant has met its burden of production. Here, Omni moved for judgment as a matter of law at the close of Teneyck's case-in-chief, prior to offering any evidence of its own. At this stage, the factfinder is not called upon to determine whether, *despite* the plaintiff's successful establishment of the *McDonnell Douglas* elements of a prima facie case, discrimination can be inferred. Rather, establishment of the requisite elements – in the absence of any rebuttal evidence from the employer – creates an inference of discrimination as a matter of law.

The District Court's opinion goes on to suggest ways in which Teneyck might have successfully established a prima facie case:

> Teneyck might have presented evidence, for example, to show that defendant hired a person who is not black . . . to fill the housekeeper position. She might have presented evidence to show the racial composition . . . of defendant's employees. She could have called defendant's employees as witnesses in her case-in-chief and set up the conflict [as to the defendant's professed legitimate nondiscriminatory reason for its actions]. She could have sought other evidence of discriminatory statements or improper attitudes of defendant's employees or officials.

*Teneyck*, slip op. at 9. This statement is not based on an accurate assessment of the law. The evidence cited by the District Court might in some cases be *relevant* to the estab-

lishment of a prima facie case, and it certainly could bear on the ultimate inquiry as to discrimination *vel non*. But we reject any implication that such evidence is *required* to establish a prima facie case. Establishment of the four *McDonnell Douglas* elements without more is sufficient. In particular, the suggestion that, in order to make out her prima facie case, Teneyck ought to have provided evidence that Omni hired someone of a different race for the position for which she applied is wrong as a matter of law. *Stella* clearly held that a Title VII plaintiff is not required to show that she was rejected in favor of someone outside her protected class. 284 F.3d at 145.

As noted above, although the foregoing aspects of the District Court's treatment of Teneyck's race discrimination claim are problematic, our *de novo* review of the record makes clear that Teneyck offered no evidence indicating that the position for which she applied remained open or that Omni continued to seek applicants of her qualifications. Therefore, we conclude that Omni is correct in its view that a motion for judgment as a matter of law was proper in light of Teneyck's failure to make out a prima facie case.

3. *The Timing of the District Court's Disposition of the Rule 50(a) Motion*

There remains a procedural question as to the District Court's handling of the Rule 50(a) motion. Omni made its motion at the close of Teneyck's case-in-chief on the afternoon of the first day of the trial. The court "reserved" ruling on the motion until the morning of the following day, allowing Omni to put its key witness – former Executive Housekeeper Freiweini Kahasay – on the stand first. This arrangement was intended to permit Kahasay to return to Boston on the evening of the first day of trial in order to be at work the next day. When the District Court ruled on the Rule 50(a) motion the following morning, the court refused to consider Kahasay's testimony.

Under normal circumstances,

> Rule 50(a) does not authorize a trial judge, after the defense has presented its case (in whole or in part), to revisit, and grant, a defense motion for judgment as a matter of law made at the close of the plaintiff's case without considering, in addition to the evidence presented in the plaintiff's case, the evidence presented by the defense.

*Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1305 n.31 (11th Cir. 1998). Moreover, as a general rule the court looks to "all of the evidence in the record" when deciding a Rule 50(a) motion. *See Reeves*, 530 U.S. at 150. This rule assumes particular importance in the context of the *McDonnell Douglas* burden-shifting framework. The Supreme Court held in *Aikens* that "[w]here the defendant has done everything that would be required of him if the plaintiff had made out a prima facie case, whether the plaintiff really did so is no longer relevant. The district court has before it all the evidence it needs to decide whether 'the defendant intentionally discriminated against the plaintiff.'" 460 U.S. at 715 (quoting *Burdine*, 450 U.S. at 253). In other words, once the defendant has responded with rebuttal evidence, the factfinder normally proceeds to the ultimate issue on the merits to determine whether the employer intentionally discriminated against the plaintiff.

Unlike *Aikens*, this case was not "fully tried on the merits." *See id.* at 714. However, Omni's rebuttal evidence was part of the record when the court granted the Rule 50(a) motion. And Omni's evidence established that it continued to seek applicants of Teneyck's qualifications and ultimately hired someone else for the position, thus indicating that the fourth and final element of a prima facie case under *McDonnell Douglas* was not really at issue. Yet, the District Court's reservation of its ruling on the motion required it to decide the motion based solely on the plaintiff's testimony.

We are now in the curious position of granting judgment to Omni based on a deficiency in Teneyck's case-in-chief that is directly addressed elsewhere in the record. This is not to say that Teneyck did not bear the burden of establishing her

prima facie case. Nor is it to suggest that Teneyck is likely to have won her case had she met this burden. Regardless, we think the District Court's decision to admit Kahasay's testimony to the record while simultaneously excluding it from consideration created a situation that normally should be avoided.

We cannot fault the District Court in this case, however. The circumstances here were unusual: The District Court reserved its ruling to accommodate a logistical difficulty and did so only for one witness. Furthermore, Teneyck failed to challenge the court's handling of the Rule 50(a) motion either before the District Court or on appeal. Teneyck offered no objection to the District Court's initial decision to "reserve" its ruling on the motion until after Kahasay's testimony, or to the court's later reaffirmation of its decision to rule on the motion based solely on the evidence in Teneyck's case-in-chief. On appeal, Teneyck has not raised any claim related to the procedure.

## C. ADEA Claim

In language closely tracking that of Title VII, the ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual [over 40 years of age] or otherwise discriminate against any [such] individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. §§ 623(a)(1), 631(a). As with Title VII, in the absence of direct evidence of discrimination, disparate-treatment claims under the ADEA are analyzed under the *McDonnell Douglas* burden-shifting framework. *See, e.g.*, *Hall v. Giant Food, Inc.*, 175 F.3d 1074, 1077 (D.C. Cir. 1999).

To establish a prima facie case under the ADEA, for a claim involving a failure to hire, the plaintiff must demonstrate that (1) she is a member of the protected class (*i.e.*, over 40 years of age); (2) she was qualified for the position for which she applied; (3) she was not hired; and (4) she was disadvantaged in favor of a younger person. *Cuddy v. Carmen*, 694 F.2d 853, 857 (D.C. Cir. 1982); *see also Forman v. Small*, 271 F.3d 285, 292 (D.C. Cir. 2001), *cert. denied*, 536

U.S. 958 (2002); *Hall*, 175 F.3d at 1077; *Paquin v. Fed. Nat'l Mortgage Ass'n*, 119 F.3d 23, 26 (D.C. Cir. 1997). We note parenthetically that in *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308 (1996), the Supreme Court held that an ADEA plaintiff need not demonstrate that she was disadvantaged in favor of a person outside the protected class, *i.e.* younger than 40. *Id.* at 312. The Court observed that evidence that the plaintiff was disadvantaged in favor of a "substantially younger" person – regardless of whether that person was under 40 years of age – would be a basis from which to infer age discrimination. *Id.* at 313.

It is undisputed that Teneyck was over 40 years of age at the time she applied for the job and that she was rejected for a position for which she was qualified. However, Teneyck neglected to offer any evidence from which it could be inferred that she was disadvantaged in favor of a younger person, so she failed to make out one of the required elements of a prima facie case of age discrimination. Accordingly, Omni was entitled to judgment as a matter of law on this claim as well.

**D. Administration of Trial Proceedings**

In addition to her challenge to the grant of Omni's Rule 50(a) motion, Teneyck claims on appeal that she was denied an "orderly, fair, and efficient" trial because of the trial judge's administration of the trial proceedings. The gravamen of this claim is that the judge was preoccupied with a number of "competing demands" on his time, and that he was therefore "inclined to jettison or to inadvertently sabotage" the trial. Appellant's Br. at 10. Teneyck identifies four purported "competing demands": (1) the criminal trial over which the judge was presiding and in which the jury was still deliberating; (2) the judge's daughter's basketball game originally scheduled for the evening of the first day of trial (which was ultimately canceled); (3) the judge's upcoming medical procedure; and (4) the need to get Omni's first witness on the stand on the first day of the trial. *Id.*

We find no merit in this claim. The only specific *actions* of the District Court cited by Teneyck are the judge's decision

to take a brief recess to address the jury in the ongoing criminal trial and his decision to allow Omni's witness to take the stand on the first day of trial without having given Teneyck's counsel notice until the morning of that day. Teneyck failed to raise any objection to either of these decisions at trial and accordingly they are not properly before us on appeal. *See, e.g.*, *Martini v. Fed. Nat'l Mortgage Ass'n*, 178 F.3d 1336, 1340 (D.C. Cir. 1999) (citing *Hooks v. Wash. Sheraton Corp.*, 578 F.2d 313, 316-17 (D.C. Cir. 1977)). In any event, we see no indication that the District Court abused its discretion to manage the trial proceedings. Nothing in the record suggests that the proceedings were conducted in a hurried or disorderly manner, that Teneyck had inadequate time to present her case or to cross-examine Omni's witness, or that she was otherwise prejudiced by the conduct on which her claim is based. Certainly nothing in the conduct Teneyck identifies remotely approaches plain error.

## III. CONCLUSION

For the reasons set forth above, we affirm the District Court's grant of judgment as a matter of law in favor of Omni.