## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|                                          |     |                               |
|------------------------------------------|-----|-------------------------------|
| **ROGER O. PEDERSON**                    | )   |                               |
|                                          | )   |                               |
| **Plaintiff,**                           | )   |                               |
|                                          | )   |                               |
| **v.**                                   | )   | **Civil Action No. 06-1418(RCL)** |
|                                          | )   |                               |
| **KAREN G. MILLS,**[1] **Administrator** | )   |                               |
| **Small Business Administration,**       | )   |                               |
|                                          | )   |                               |
| **Defendant.**                           | )   |                               |
|                                          | )   |                               |

## MEMORANDUM OPINION

Upon consideration of defendant's Motion for Summary Judgment [43], plaintiff's

Opposition [45], defendants' Reply [47], the applicable law and the record herein, for the reasons

set forth below, the Motion for Summary Judgment will be **DENIED** as to all claims pertaining

to the GS-14 position, and **GRANTED** as to all claims pertaining to the GS-15 position,

articulated in paragraph 10 of the Complaint, for which plaintiff failed to exhaust administrative

remedies.

### I. Background

Plaintiff Roger Pederson, then a 52-year-old white male, applied for a GS-14 Examiner

position for which he was qualified in the Investment Division of the Small Business

Administration ("the Position"), and the Position went to Lourdes Gatell, a significantly younger

Hispanic woman of comparable qualifications ("Selectee"). The Position included duties as

acting Director of Examinations—a GS-15 position—in the Director's absence, and Selectee

later applied for and was promoted to that position permanently. Based on these facts, plaintiff

brings claims of race and sex discrimination under Title VII of the Civil Rights act of 1964, as

---

[1] Karen G. Mills is substituted for Sandy K. Baruah pursuant to Fed. R. Civ. P. 25(d).

amended, codified at 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and age discrimination under the Age Discrimination in Employment Act of 1967, as amended, codified at 20 U.S.C. § 623, *et seq.* ("ADEA"), in his non-selection for both the Position and the higher GS-15 position.

Plaintiff has produced evidence to establish a prima facie case in the Title VII and ADEA claims pertaining to the GS-14 position. Defendant has asserted a legitimate, non-discriminatory basis for the hiring decision (that plaintiff did not get along with co-workers), and now seeks summary judgment by alleging that plaintiff cannot provide evidence of discriminatory intent or prove that defendant's legitimate reason was pretext. Plaintiff has responded by providing evidence of possibly discriminatory remarks made by the deciding official and two interviewing officials in his non-selection, and by alleging that defendant's proffered reason is beyond belief.

## II. Legal Standard

### a. Summary Judgment

Summary judgment is appropriate upon a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must point to an absence of material evidence in the record, and then the burden shifts to the non-movant to show the existence of a dispute for trial. *Bias v. Advantage Intern, Inc.*, 905 F.2d 1558, 1561 (D.C. Cir. 1990). In reviewing disputed facts, the Court must draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The non-moving party must, however, provide more than a "scintilla of evidence," and summary judgment is appropriate where the evidence could not persuade a reasonable jury to find for the non-movant. *Id.* at 252. Conclusory allegations by the non-movant are not enough to survive summary judgment. *Exxon Corp. v. F.T.C.*, 663 F.2d 120, 127 (D.C. Cir. 1980).

**b. *McDonnell Douglas***

In the context of employment discrimination claims (under both Title VII and the ADEA) such as those here, courts apply the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), to summary judgment evaluations. *See Pardo-Kronemann v. Jackson*, 541 F. Supp. 2d 210, 214 (D.D.C. 2008) (Title VII case); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 140 (2000) (ADEA case). In *McDonnell Douglas*, the Supreme Court established that, in discrimination cases, the plaintiff must first bring a prima facie case of discrimination which the employer may then sufficiently rebut by articulating a legitimate, non-discriminatory reason for its employment decision. 411 U.S. at 804. The plaintiff must then have an opportunity to present evidence that the employer's legitimate reason is pretext and that the real reason for its decision was discriminatory. *Id.* at 805.

At the summary judgment stage, the *McDonnell Douglas* framework dissolves once the defendant proffers a legitimate reason, and to avoid dismissal "the plaintiff must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason." *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003). This showing may involve the strength of the plaintiff's prima facie case[2], direct evidence of

---

[2]     The Court notes that a court should not decide whether the plaintiff has established a prima facie case at the summary judgment stage. *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008). The defendant cites *Brady* for the proposition that we should *only* ask: "Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason…?" (Def.'s Mot. 9.) But the quote from *Brady* continues: "…and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" 520 F.3d at 494. Thus the question at summary judgment is broader than the defendant proposes, and courts since *Brady* have used evidence from the prima facie case (without deciding whether there is one or not) as well as evidence of pretext to answer it. *See Pardo-Kroneman*, 541 F. Supp. 2d at 215-16.
       This court reads *Brady* as broadening rather than narrowing the summary judgment inquiry, because it allows the plaintiff to build his case from circumstantial evidence of pretext even if he has not initially established a prima facie case of discrimination. The trial court in *Brady* had dismissed the plaintiff's claims, because of a lack of a prima facie case, without reviewing plaintiff's evidence of pretext, so the appellate court considered the plaintiff's evidence rebutting the proffered legitimate reason before affirming summary judgment. 520 F.3d at 495-96. This Court will take the same approach, reviewing all of the evidence (of a prima facie case, pretext, and discrimination) to decide if a jury could infer discriminatory behavior by defendant.

discrimination, and circumstantial evidence indicating that the proffered legitimate reason is pretext. *Pardo-Kronemann*, 541 F. Supp. 2d at 215; *Waterhouse v. District of Columbia*, 298 F.3d 989, 993 (D.C. Cir. 2002).

## III. Discussion

### a. Discrimination in Non-Selection for the GS-15 Director of Examinations Position

Defendant seeks dismissal of all claims related to the GS-15 Director of Examinations position, which position plaintiff claims Selectee acquired as a foreseeable result of her appointment to the GS-14 position at issue in this case. Defendant rightly notes that a plaintiff must exhaust administrative remedies through the EEOC before bringing a claim to federal court, *Battle v. Rubin*, 121 F. Supp. 2d 4, 7 (D.D.C. 2000), and that each alleged incident of discrimination "constitutes a separate actionable 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).

The non-selection for the GS-15 position could be seen as a separate claim of employment discrimination by defendant, but plaintiff recognizes that without a year in a GS-14 position he was ineligible to apply for the GS-15 promotion, did not apply for the promotion, and therefore could not file a separate EEO complaint for non-selection as to that latter position. (Pl.'s Opp'n 32 n.4.) He instead argues that Selectee's promotion to the GS-15 position goes to the issue of damages, since it was a foreseeable result of her selection to the GS-14 position. *Id.* at 32. Plaintiff claims he exhausted administrative remedies because he attempted to amend his EEO complaint to include the GS-15 issue as soon as he learned of Selectee's receipt of the promotion. *Id.* at 33. However, Selectee's actual promotion to the position would only be relevant if plaintiff were alleging discrimination in his non-selection for that position as a separate complaint, which he does not.

If Selectee's promotion to the GS-15 position merely goes to the issue of damages in plaintiff's GS-14 claims—because, as plaintiff asserts, the promotion was a foreseeable result of selection to the GS-14 position—then plaintiff should have timely included the issue in his original EEO complaint. If the promotion was as foreseeable as plaintiff suggests, then it ought to have been foreseeable to him when he filed his initial complaint, and not only after Selectee's receipt of the GS-15 position. Had plaintiff already pleaded the damages issue, then Selectee's promotion would have served as substantial support for plaintiff's theory, but the manifestation of the theory was not a prerequisite for pleading it in a timely fashion. Thus, the denial of plaintiff's second motion to amend in the EEO proceedings means he did not timely bring forth the GS-15 promotion issue, and may not assert it for the first time in this court. The Court also notes that, even had plaintiff brought forth the damages issue in a timely fashion, he has not shown that the GS-15 promotion was a foreseeable result of acquiring the GS-14 position. The GS-15 job was "a separate competitive position and not in the career ladder of the [GS-14] Position." (Def.'s Reply 16.) Plaintiff has failed to exhaust administrative remedies and all claims of discrimination or damages related to the GS-15 Director of Examinations position must be dismissed. From this point forward all discussion shall pertain only to the GS-14 Examiner position.

b. **Title VII Race and Gender Discrimination Claims**

Plaintiff's claims of race and sex discrimination hinge on the following facts: that the head of the Small Business Administration ("SBA") at the time of plaintiff's non-selection was Hispanic, and that the deciding official in the GS-14 hiring decision indicated to an interviewer that the Selectee, a Hispanic female, "helps our numbers." (Pl.'s Opp'n 17.) The evidence

produced by plaintiff as to these facts suffices to create a genuine issue of material fact about race and sex discrimination.

Evidence of racial remarks—even unrelated to the particular employment decision—by a decision-maker may be probative of pretext and discriminatory intent. *Kolstad v. Am. Dental Ass'n*, 108 F.3d 1431, 1437 (D.C. Cir. 1997); *see also Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989). Discriminatory statements by a decision-maker in the context of the decisional process are direct evidence of discrimination, and relieve the plaintiff of adherence to the *McDonnell Douglas* framework. *See, e.g.*, *Thomas v. Nat'l Football League Players Ass'n*, 131 F.3d 198, 203-04 (D.C. Cir. 1997); *Luciana v. Monfort, Inc.*, 259 F.3d 906, 909 (8th Cir. 2001) ("To be entitled to a direct evidence analysis, the plaintiff must present evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude sufficient to permit the factfinder to infer that that attitude was more likely than not a motivating factor in the employer's decision.")

Under the *Luciana* definition, the statement attributable to decision-maker Jeff Pierson that the Selectee "helps our numbers" constitutes direct evidence of discrimination and relieves plaintiff of his *McDonnell Douglas* burden. *See, e.g.*, *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1121 (9th Cir. 2004). Pierson made the remark during discussions with the interviewing officials about the potential candidates for the job in question, indicating his preference for Selectee. (Pl.'s Opp'n 17.) Thus, even without a showing that defendant's proffered legitimate reason is pretext, plaintiff's Title VII claims survive summary judgment because of the 1991 amendment to Title VII, which holds an employer liable under the act when "the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, *even though other factors also motivated the practice*." 42 U.S.C. §

2000e-2(m) (emphasis added). Even if a legitimate, non-discriminatory motive factored in as well, direct evidence of discriminatory intent prompts a mixed-motive analysis and creates a genuine issue, and the Title VII claims must survive summary judgment.

### c. Age Discrimination Claim Under the ADEA

Plaintiff does not provide any direct evidence of age discrimination of the same magnitude as that of race and gender discrimination, so the Court must revert back to the *McDonnell Douglas* analysis to determine if the ADEA claim survives summary judgment. The Court must decide if a reasonable jury could infer discrimination from "(1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanations for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer)." *Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1151 (D.C. Cir. 2004).

Though the plaintiff has not produced enough evidence to prove that defendant's proffered reasons for the decision are pretext,[3] the weak evidence he has provided, combined with other evidence of discriminatory motive, could persuade a reasonable jury to infer discrimination. To show pretext, plaintiff provides evidence that defendant knew of Selectee's difficulties with a former supervisor, that Selectee may have been pre-selected for the Position, and that plaintiff's own qualifications were far superior to Selectee's. (Pl.'s Opp'n 18-23.) Though these facts do not prove that plaintiff was "significantly" or "markedly" better qualified than Selectee, as required for a finding of pretext in *Hendricks v. Paulson*, 520 F. Supp. 2d 65,

---

[3] Thus, defendant may be able to establish the "same action" affirmative defense at trial if they can prove that plaintiff still would not have been hired absent any discriminatory motive. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 258 (1989); *Lewis v. Young Men's Christian Ass'n*, 208 F.3d 1303, 1303 (11th Cir. 2000) (per curiam) (holding that *Price Waterhouse* still applies to ADEA cases, though not to Title VII; summary judgment affirmed where defendant proved by a preponderance of the evidence that it would have made the same employment decision absent the alleged discrimination). But defendant has not asserted that defense at this time, probably to avoid the mixed motive analysis that *Price Waterhouse* compels.

91 (D.D.C. 2007), and other cases cited by defendants, they do lend some support to an overall inference of discriminatory preference.

Plaintiff's strongest argument for an inference of age discrimination comes from the evidence produced concerning interviewers Harry Haskins and Charles Mezger ("the Interviewers"), who have expressed concern at various times about the old age of many of the examiners in the Investment Division. (Pl.'s Opp'n 13-16.) Though defendant rightly argues that "stray remarks," particularly by non-decision-makers, are not direct evidence of discrimination, *e.g. Beeck v. Fed. Express*, 81 F. Supp. 2d 48, 53 (D.D.C. 2000), most of the cases they cite involve discriminatory remarks by uninvolved co-workers or remarks that have no bearing on the employment decision in question. Stray remarks may provide evidence of employment discrimination if there is "a nexus between the stray remark and the adverse employment decision." *Kalekiristos v. CTF Hotel Mgmt. Corp.*, 958 F. Supp. 641, 665 (D.D.C. 1997).

The remarks made by the Interviewers did have some nexus to the eventual employment decision. Rather than arbitrary discriminatory statements made out of spite or in jest, both of the Interviewers expressed concern about the age of employees in the context of a discussion about *hiring* practices. Haskin's concerns were even made in response to a statement by the then hiring official that the "Investment Division needed to try to hire younger Examiners." (Pl.'s Opp'n 13.) Though not directly related to plaintiff's specific non-selection, discriminatory statements in discussions about the agency's hiring practices certainly create a nexus between those statements and a later hiring decision. It does not matter that the Interviewers were not the deciding officials in plaintiff's non-selection, because they certainly had ample opportunity to influence the decider's opinion. *See Griffin v. Wash. Convention Ctr.*, 142 F.3d 1308, 1310 (D.C. Cir. 1998);

*Haas v. Advo Sys., Inc.*, 168 F.3d 732, 733-34 (5th Cir. 1999). Plaintiff has shown a genuine issue of material fact as to age discrimination, and that claim must survive summary judgment.

**IV. Conclusion**

For the foregoing reasons,

The Motion for Summary Judgment [43] will be **GRANTED** as to all claims related to the GS-15 Director of Examinations position,

The Motion for Summary Judgment [43] will be **DENIED** as to the Title VII and ADEA claims in plaintiff's non-selection for the GS-14 position.

A separate order shall issue this date.


Signed by Royce C. Lamberth, United States District Judge, on July 20, 2009.