# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

**No. 21-7133**

**September Term, 2022**

FILED ON: OCTOBER 28, 2022

EUGENE HUDSON, JR.,

        APPELLEE

v.

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES,

        APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cv-02094)

Before: HENDERSON and WILKINS, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*

## **J U D G M E N T**

This appeal was considered on the record, briefs, and oral arguments of the parties. The Court has accorded the issues full consideration and determined that they do not warrant a published opinion. *See* FED. R. APP. P. 36; D.C. CIR. R. 36(d). For the following reasons, it is

**ORDERED AND ADJUDGED** that the judgment of the District Court be **AFFIRMED.**

In October 2017, Appellee Eugene Hudson, Jr. sued his former employer, the American Federation of Government Employees ("AFGE"), for race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. Following a six-day trial, the jury found AFGE liable for race discrimination and awarded Hudson $100,000 in emotional distress damages. The District Court upheld the jury verdict and denied AFGE's motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b). *Hudson v. Am. Fed'n of Gov't Emps.*, No. 17-cv-2094, 2021 WL 5083436, at *1 (D.D.C. Nov. 2, 2021). On appeal, AFGE contests the sufficiency of the evidence supporting the jury's finding of AFGE's liability for race discrimination and Hudson's award of emotional distress damages.

This case is one of many between the parties. Accordingly, we recount the details pertinent only to the present appeal.

Hudson was the first African American elected National Secretary-Treasurer ("NST") for the AFGE. He was first elected to serve as NST in 2012, and he was re-elected without opposition in 2015. During Hudson's tenure as NST, the National President of AFGE was J. David Cox. Hudson presented evidence that Cox referred to Hudson as "boy" and "son" "a number of times, particularly starting in 2016," and that this became "a real bone of contention between the two of us." J.A. 467–68. Hudson's experience was not unique, however, as another non-white AFGE employee testified that Cox also referred to him as "boy" and "son." J.A. 448. At trial, this employee testified that he asked Cox to stop using these disrespectful terms, but Cox refused. J.A. 449. At trial, Cox confirmed referring to Hudson as "boy" and "son," with the explanation that he has used these terms "pretty generically all my life." J.A. 453.

Hudson also claimed that while at an event honoring then-President Barack Obama, Cox looked to Hudson and said, "[t]hat boy hasn't done nothing for us." J.A. 474. According to Hudson, "there were many other occasions where [Cox] would denigrate African American managers in my presence and then look at me as though I was next." J.A. 462. On one occasion, Hudson claims an AFGE member said, "SMB, SMB"—a racial epithet signifying "simple-minded blacks," to Cox, and that Cox "looked at [Hudson] and snickered." J.A. 481. In two separate incidents, another AFGE member called Hudson "the N-word." J.A. 464, 469. After Hudson filed an internal complaint reporting the first incident, an internal AFGE committee investigated and issued a report, recommending that the employee apologize. Cox followed the committee's recommendation and instructed the employee to apologize to Hudson. Hudson testified that he "didn't feel as though there were any consequences for calling me the N-word." J.A. 466.

Despite Hudson having won two consecutive elections, Cox stripped Hudson of his NST-related supervisory responsibilities over the Human Resources and Information Services departments. At the end of 2016, Cox removed Hudson "from all chairmanships," and in August 2017, Cox removed Hudson from the NST position altogether. J.A. 32. Hudson alleged that these adverse employment actions were motivated by racial animus, and he sued AFGE for employment discrimination, retaliation, a hostile work environment, and pretextual discrimination under Title VII and § 1981. On AFGE's motion, the District Court dismissed all but five counts of alleged racial discrimination. The District Court also granted AFGE's motion for summary judgment such that Hudson's trial included only his counts relating to (1) losing authority over expense vouchers, (2) losing oversight of the Human Resources and Information Services departments, and (3) suffering emotional distress.

On June 7, 2021, the parties began their six-day jury trial. At trial, Hudson argued that Cox's actions limiting Hudson's authority were motivated by racial animus and caused him emotional distress. In response, AFGE argued that Cox limited Hudson's supervisory responsibilities to benefit operational efficiency. At the close of Hudson's case-in-chief, AFGE filed a motion for judgment as a matter of law pursuant to Rule 50(a), arguing that no reasonable juror could find Cox's actions constituted racial discrimination. The District Court denied this motion and instructed the jury to only find AFGE liable if Hudson proved "by a preponderance of the evidence: 1) that Defendant took one or more of the [] alleged actions; and 2) that Defendant did so because of Plaintiff's race." J.A. 569. Neither party contests this jury instruction.

2

The jury returned a verdict in Hudson's favor. While the jury found Hudson failed to prove AFGE discriminated against him when Cox "revoked [Hudson's] authority to approve the expense vouchers of AFGE National Executive Council members," the jury agreed that "Hudson proved by a preponderance of the evidence that AFGE discriminated against him on the basis of race when it [] removed the AFGE Human Resources and Information Services departments from his supervision." J.A. 512. The jury then awarded Hudson $100,000 for emotional distress damages caused by AFGE's racial discrimination.

In response, AFGE filed a motion for a judgment as a matter of law under Rule 50(b), contesting the sufficiency of the evidence. The District Court disagreed, finding the record sufficient to allow a jury to doubt AFGE's nondiscriminatory explanation for the adverse employment action and instead conclude that Cox's actions constituted racial discrimination. Accordingly, the District Court denied AFGE's motion for judgment as a matter of law and upheld the jury's verdict.

AFGE filed a timely notice of appeal, and we have jurisdiction to review pursuant to 28 U.S.C. § 1291. We review *de novo* a motion for judgment as a matter of law. *See Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1149 (D.C. Cir. 2004). Judgment as a matter of law is appropriate only when all evidence and reasonable inferences "are so one-sided that reasonable men and women could not have reached a verdict in plaintiff's favor." *Radtke v. Lifecare Mgmt. Partners*, 795 F.3d 159, 163 (D.C. Cir. 2015) (citation omitted). Once the jury has returned a verdict, courts do not "lightly disturb a jury verdict." *Muldrow ex rel. Est. of Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 165 (D.C. Cir. 2007).

Title VII prohibits employers from discriminating against their employees on the basis of various protected categories, including race. Pursuant to the three-part burden shifting framework, a plaintiff claiming workplace discrimination under Title VII must first establish a *prima facie* case of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). The employer can defeat the charge with evidence of a legitimate, nondiscriminatory justification for the adverse employment action, unless the plaintiff proves that the proffered justification is merely a pretext for illegal discrimination. *Id.* This standard is also used in Section 1981 cases. *See Ayissi–Etoh v. Fannie Mae*, 712 F.3d 572, 576 (D.C. Cir. 2013) (per curiam) ("In Section 1981 and Title VII cases, courts use the same framework for determining whether unlawful discrimination occurred.").

At issue here is whether the evidence presented is such that no reasonable jury could have found AFGE liable for race discrimination or awarded Hudson $100,000 in emotional distress damages. First, AFGE argues that no reasonable jury could find AFGE liable for race discrimination because Hudson allegedly conceded that Cox's actions were motivated by "*something other than race*—a concession that is fatal to Hudson's discrimination theory." Appellant Br. at 16. Here, AFGE refers to a section of Hudson's deposition testimony where he stated that Cox claimed authority over the Human Resources department "to punish Hudson for not supporting an organizing campaign of great importance to Cox," and over the Information

3

Services department "to gain control over the money that AFGE's governing body had recently pumped into that Department." Appellant Br. at 17. Because Hudson argued a single-motive theory of discrimination, AFGE contends that Hudson's testimony discussing another motive "unquestionably demolishes Hudson's race discrimination theory as a matter of law" under our decision in *Carpenter v. Federal National Mortgage Ass'n*, 165 F.3d 69 (D.C. Cir. 1999). Appellant Br. at 17.

*Carpenter* involved a plaintiff suing her employer for sex discrimination under Title VII. *See* 165 F.3d at 70. The plaintiff in *Carpenter* argued that her employer failed to promote her because she had previously asked that an anti-fraternization policy be added to the employer's Code of Conduct. *See id.* at 71–73. But the plaintiff's evidence demonstrating sex discrimination did not extend much further than the evidence of animus against her views favoring an anti-fraternization policy. Indeed, this Court resolved *Carpenter* on a motion for summary judgment in the employer's favor and explained that the plaintiff's entire theory was based "on the premise that [her employer's] male upper management concocted a scheme to defeat her as a candidate for promotion because of her outspoken advocacy of eliminating fraternization in the workplace." *Id.* at 72.

Unlike the plaintiff in *Carpenter* whose sole theory was that she experienced discrimination due to her views, and who failed to explain how this demonstrated sex discrimination, Hudson argued a theory of race discrimination while simultaneously acknowledging that another motivation—such as financial gain—might have been a contributing factor. Hudson also presented several examples of race discrimination to support his claim that the adverse employment actions at issue were motivated by racial animus. And when AFGE asked Hudson about his deposition testimony discussing Cox's non-racial motivation on cross-examination, Hudson stated, "I believe Cox does spend money like water, and I believe that he transferred it for the money and [I] *also* believe that he transferred it due to racial animus. Not every answer I answered [in my deposition] was a complete answer." J.A. 485 (emphasis added).

Here, the jury could have reasonably construed Hudson's deposition testimony discussing Cox's financial motivations in conjunction with the other evidence presented at trial to find that Cox's actions constitute racial discrimination. For instance, Jane Nygaard, a former member of the National Executive Council, testified that while she believed Cox limited Hudson's authority as "a way to get back at NST Hudson," she also agreed that Cox's decisions were partly motivated by race. J.A. 441. At best, AFGE's argument presented an alternative explanation for Cox's actions. But when multiple theories explaining the contested action are presented, it is for the jury to determine the ultimate outcome. Such is the nature of a jury trial. In this case, we know that the jury carefully considered the evidence of discrimination and alternative explanations because it found that Hudson proved that the removal of his responsibilities for the Human Resources and Information Services departments was motivated by race, but it did not find that the removal of his voucher responsibilities was due to racial discrimination.

The jury's verdict is well-supported by the record. Not only did Hudson testify that Cox referred to him as "boy" and "son," but Cox also confirmed he did so regularly. J.A. 467–68. As

explained by the Supreme Court, the term "boy" can indicate racial animus. *See Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006). Because nothing in the record so much as suggests that Hudson abandoned his theory that Cox's actions were motivated by race, and because Hudson presented credible evidence demonstrating racial discrimination, the evidence is sufficient to support the jury's verdict finding AFGE liable for race discrimination.

In the alternative, AFGE argues Hudson's evidence was conclusory, vague, and therefore insufficient to support the jury's verdict awarding Hudson emotional distress damages. At trial, Hudson testified that he felt "just devastated" by Cox's actions. J.A. 481. More specifically, Hudson explained that Cox's actions made Hudson feel "discriminated against" and that it was both "embarrass[ing] and humiliating" as "[t]here was always a little chatter or snicker about the fact that [Hudson] was demoted." *Id.*

This evidence is sufficient to support the jury's award of emotional distress damages. As explained in the District Court's opinion, *see Hudson*, 2021 WL 5083436, at *8–9, physical injury is not required to obtain "mental and emotional distress" damages. *See Daskalea v. Dist. of Columbia*, 227 F.3d 433, 443–44 (D.C. Cir. 2000) (citing *Carey v. Piphus*, 435 U.S. 247, 264 (1978)). And a plaintiff's testimony alone can at times establish damages. *See, e.g., Carter v. Duncan-Huggins, Ltd.*, 727 F.2d 1225, 1238 (D.C. Cir. 1984). Because Hudson's evidence is sufficient to show he experienced emotional distress caused by AFGE's racial discrimination, there is no basis to disrupt the jury's verdict. We therefore decline AFGE's invitation to hypothesize as to how Hudson's arguments might have fared under out-of-circuit precedent.

In sum, AFGE has failed to demonstrate the evidence is such that no reasonable jury could have found AFGE liable for employment race discrimination and awarded Hudson emotional distress damages. Accordingly, we affirm the District Court's decision denying AFGE's motion for judgment as a matter of law.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold the issuance of the mandate herein until seven days after the resolution of any timely petition for rehearing or rehearing *en banc*. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41(a)(1).

**Per Curiam**

FOR THE COURT:
Mark J. Langer, Clerk

BY:    /s/
        Daniel J. Reidy
        Deputy Clerk

5